395 F.2d 891
 GENERAL ELECTRIC COMPANY, Plaintiff-Appellee,
v.
LOCAL 761, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL-CIO, Defendant-Appellant, and
International Union of Electrical Radio and Machine Workers, AFL-CIO, Intervening Defendant-Appellant.
 No. 17476.
 United States Court of Appeals Sixth Circuit.
 June 8, 1968.
 
 Frank H. Stewart, Cincinnati, Ohio, Paul R. Moran, Cincinnati, Ohio, on brief; Richard FitzSimmons, Louisville, Ky., of counsel, for appellants.
 Ruth Weyand, Washington, D. C., Irving Abramson, Melvin Warshaw, Washington, D. C., on brief, for appellee.
 Before O'SULLIVAN, PECK and McCREE, Circuit Judges.
 O'SULLIVAN, Circuit Judge.
 
 
 1
 We here consider the appeals of appellant unions[1] from a declaratory judgment entered in favor of the plaintiff-appellee, General Electric Company, (GE). We also have before us the unions' motion to dismiss the cause on the ground that the issues involved became moot after the appeal was docketed in this Court. We grant this motion for the reasons discussed below.
 
 
 2
 GE and appellant International Union were the signatories to a collective bargaining contract, referred to as the GEIUE National Agreement, covering all of GE's production and maintenance employees at various plants throughout the country, including those working at Louisville, Kentucky. The employees at Louisville were members of appellant Local 761, through whom the International did some of its bargaining. The contract period was from September 26, 1963, to October 2, 1966.
 
 
 3
 GE filed its complaint in the District Court[2] on April 29, 1966, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. It sought to have it declared that an agreement negotiated between the company's labor relations people and the Local Union to the effect that on and after December 1, 1964, the Local would give ten days advance notice of the start of any strike, constituted "a valid and subsisting [agreement], binding both parties by its terms * * * and that defendant's attempted rescission of that agreement was invalid * * *." The District Judge granted GE the relief prayed for and entered judgment on August 2, 1966.
 
 
 4
 The December 1, 1964, agreement between GE and Local 761 grew out of the settlement of several pending grievances. Prior to the time of this settlement, GE had been experiencing numerous work stoppages,[3] and grievances had arisen over discipline imposed by GE upon some of the involved employees.
 
 
 5
 It is not disputed that by an exchange of memoranda between GE's Labor Relations Manager at Louisville and the President of Local 761, an agreement was reached whereby, in recognition that strikes are "costly to all concerned" and in consideration of GE's withdrawal of imposed discipline, Local 761 agreed that thereafter it would give GE ten days advance notice prior to any strike. This procedure was thereafter followed with beneficial results until a strike without notice began on March 2, 1966, and continued until March 22, 1966. Prior to this event, the International had, in August of 1965, notified GE that the Local's December 1, 1964, agreement to give the ten-day notice was not binding because it claimed that such agreement was a "new local understanding" and as such would not be effective unless "approved by * * * the union [IUE]." It had not been formally approved by the parent union — IUE. GE replied that the ten-day notice agreement was not a "local understanding" but merely a grievance settlement within the power of the local to enter.[4]
 
 
 6
 The local did not at this time join with the International in contesting the validity of the agreement; however, on February 26, 1966, the Local sent a telegram to GE advising that "the agreement on the ten day notice * * * is null and void effective immediately." The strike followed on March 2, 1966, and lasted until March 22.
 
 
 7
 It was in this setting that GE on April 29, 1966, commenced the instant action for declaratory relief. There then remained some six months of the contract period during which GE needed the protection of the ten-day strike notice agreement. The position of the union that such agreement was invalid did then bring into being an "actual controversy" within the meaning of § 2201 U.S.C. 28.
 
 
 8
 The present appeal from the August 2, 1966, judgment was docketed in this Court on September 29, 1966. After that, and on October 2, 1966, the collective bargaining agreement between General Electric and the International Union expired by its own terms. The appellants asserted, and appellee does not contend otherwise, that the interim settlement between GE and the Local, relative to the ten-day notice of strike, likewise expired on October 2, 1966. The appellants' motion to dismiss this cause for mootness, filed on February 27, 1967, contends that thereupon the "actual controversy" essential to jurisdiction under 28 U.S.C. § 2201 ceased to have existence. Responding to appellants' motion, GE asserted that notwithstanding the expiration of the contested agreement, "there is here an actual controversy between the parties including an important right to money damages." (Emphasis supplied.) This was the first suggestion by GE that money damages were a consideration in its seeking of declaratory relief.
 
 
 9
 We note as of relevance, but not of controlling importance, a position taken by GE in a proceeding before the National Labor Relations Board, which also involved the validity of the ten-day strike notice agreement.[5] Sometime after the expiration of the GE-IUE National Agreement on October 2, 1966, GE filed a motion to dismiss the NLRB proceedings upon the ground that the matter had become moot. Counsel for GE there took the position that "the 10 day agreement * * * expired October 2, 1966," and further observed:
 
 
 10
 "But with respect to the 10 day agreement, that clearly is a dead duck and no amount of speculation as to problems which might or might not arise from it is going to revive the thing."
 
 
 11
 GE's motion succeeded and the NLRB matter was accordingly dismissed.
 
 
 12
 It was not, and is not, claimed by GE that anything happened after the commencement of this action, or that anything may happen hereafter, which will call for enforcement of the ten-day notice agreement. Furthermore, nothing in GE's address to the District Court or in its prayer for relief suggested that the instant declaratory action was brought for other than prospective purposes. GE's prayer sought an adjudication that the agreement was valid and subsisting, that Local 761's attempted rescission was invalid,
 
 
 13
 "together with an award of costs and such other relief as may be just and equitable in the premises to assure the adequate protection of the plaintiff's rights under the said collective bargaining agreement, and the agreement of December 1, 1964." (Emphasis supplied.)
 
 
 14
 In addition to its now claim that it "is actively considering" an application for damages, other asserted reasons for the continued existence of a judicially cognizable controversy appear in GE's main appeal brief, filed subsequent to its answer to the Unions' motion to dismiss, as follows:
 
 
 15
 "Far more than a mere declaration of rights is involved. Apart from the obvious right of damages for breach of the undertaking, there are other radiations. If the agreement is valid, GE will be prevented from restoring the disciplinary action which gave rise to the ten-day agreement. The validity of the agreement will affect disciplinary action which may be issued by GE to employees who participated in the March 2-22 strike."
 
 
 16
 To the extent understandable, this assertion is speculation as to vague possibilities that might have been, but in fact were not, disclosed as being in contemplation when GE sought declaration of the validity of the December 1, 1964, strike notice agreement. We do not think that these can now be employed as constituting the basis of actual controversy between the parties.
 
 
 17
 We may assume that the complaint in this case could have asked for damages from the union as well as declaratory relief. See authorities cited by GE: Dann v. Studebaker-Packard Corp., 288 F.2d 201 (6th Cir. 1961); Security Insur. Co. of New Haven v. White, 236 F.2d 215 (10th Cir. 1956); Carter Oil Co. v. McCasland, 190 F.2d 887 (10th Cir. 1951). We may assume also that a subsequent and independent action might have been, or might yet be, commenced for recovery of damages. These authorities are cited to support GE's claim in such respect: Edward B. Marks Music Corp. v. Charles K. Harris Music Pub. Co., Inc., 255 F.2d 518 (2d Cir. 1958); Sinclair Refining Co. v. Burroughs, 133 F.2d 536, 538 (10th Cir. 1943); 2 Anderson, Declaratory Judgments § 451, at 1059-60.
 
 
 18
 But no such action has been commenced, nor is it claimed that such action was, or is, contemplated. Nothing that we are saying should be read as a holding by us that such an action may hereafter be maintained, and we need not determine here whether such an attempt would be a proper utilization of 28 U.S.C. § 2202 for "further relief," or whether it would violate the rule against "splitting causes of action." See 6 Moore's Federal Practice Par. 57.10, at 3048-3049 (2d ed. 1965). It is our opinion that it would be improper for us to further process this case merely to provide GE with ammunition for its continuing negotiations with the involved unions. In this regard, what we decided in McNally v. American States Ins. Co., 339 F.2d 186 (6th Cir. 1964) in no way involved the question of mootness here presented, or the question of a later claim for damages as "further relief," and GE's reliance upon it is misplaced.
 
 
 19
 We find no case whose facts or ruling would provide precise precedent for the view we take, nor any providing a holding directly contrary to ours. Without fresh dissertation, however, we are satisfied that the principle we follow has ample support. See Shank v. NLRB and General Electric Co., 260 F.2d 444, 446 (7th Cir. 1958); Council of Western Electric Technical Employees National v. Western Electric Co., 137 F.Supp. 290, 292 (S.D.N.Y.1955), modified on other grounds, 238 F.2d 892 (2d Cir. 1956); Textile Workers Union of America, C.I.O. v. Bates Manu. Co., 158 F.Supp. 410, 411 (Me.1958); Mackay v. Loew's Inc., 84 F.Supp. 676, 677 (S.D.Cal.1949), affirmed on other grounds, 182 F.2d 170, 18 A.L.R.2d 348 (9th Cir. 1950).
 
 
 20
 We believe that the Supreme Court's opinion in Local No. 8-6, Oil, Chemical and Atomic Workers Union v. Missouri, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960) provides the rule we must follow. There a union of utility workers commenced a strike notwithstanding, and in defiance of, an executive order of the governor of Missouri seizing the involved utility. The state of Missouri thereupon obtained an injunction against the strikers in the circuit court of St. Louis and declared that the act which authorized the governor to seize the utility was valid and constitutional. Shortly thereafter the strike was terminated. This was followed by a new labor agreement and the end of the governor's seizure. The union appealed and the Supreme Court of Missouri held that the part of the Missouri statute which was used to justify the seizure was constitutional, refraining from passing upon other contentions of the union. The union's appeal to the United States Supreme Court attacked the finding of validity of the employed Missouri statute and sought to have it and additional parts of the statute declared unconstitutional. The Supreme Court took up the question of mootness at the hearing on the merits. In holding the matter moot, the Court said:
 
 
 21
 "Because that injunction has long since `expired by its own terms,' we cannot escape the conclusion that there remain for this Court no `actual matters in controversy essential to the decision of the particular case before it.' United States v. Alaska S.S. Co., 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808. Whatever the practice in the courts of Missouri, the duty of this Court `is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293." 361 U.S. at 367, 80 S.Ct. at 394.
 
 
 22
 What makes the case especially important here is that it was there contended that the imposition of "monetary penalties upon labor unions which continue a strike after seizure" and "loss of seniority for employees participating in such a strike," would depend upon the adjudication of the validity of the involved statute. 361 U.S., at 369, 80 S.Ct., at 395. The possible assertion of these penalties was said to necessitate a declaration that said penalties could, or could not, be imposed. In fact, liability for monetary penalties was already the subject of a separate suit. Notwithstanding these contentions, the Court concluded:
 
 
 23
 "The decision we are asked to review upheld only the validity of an injunction, an injunction that expired by its own terms more than three years ago. Any judgment of ours at this late date `would be wholly ineffectual for want of a subject-matter on which it could operate. An affirmance would ostensibly require something to be done which had already taken place. A reversal would ostensibly avoid an event which had already passed beyond recall. One would be as vain as the other. To adjudicate a cause which no longer exists is a proceeding which this Court uniformly had declined to entertain.' Brownlow v. Schwartz, 261 U.S. 216, 217-218, 43 S.Ct. 263, 67 L.Ed. 620." 361 U.S., at 371, 80 S.Ct., at 396.
 
 
 24
 Whatever factual differences there may be in Oil Workers, above, do not destroy it as analogous to the case at bar. In Shank v. NLRB, 260 F.2d 444, 445 (7th Cir. 1958), the Seventh Circuit affirmed dismissal of a complaint, saying:
 
 
 25
 "In regard to Count IV, wherein plaintiff Ruth Warner sought construction of an expired union contract, the District Court held that the matter was moot, that there was no showing of existing controversy, and declined to enter an advisory opinion regarding the validity of a possible defense predicated on the expired contract, which might be raised in an action for damages, pending or to be brought in the state courts. The District Court accordingly allowed motion of defendant General Electric Company to dismiss Counts III and IV." 260 F.2d, at 446.
 
 
 26
 The District Court's unreported opinion had said:
 
 
 27
 "There is no actual controversy existing on a contract that has expired. An action for a declaratory judgment does not lie in a controversy that is moot. If the plaintiffs, or either of them, have cause of action against the defendant General Electric Company, the Declaratory Judgment Act, Title 28, § 2201 U.S.C.A. does not authorize advisory opinions or legal advice by this Court as to the applicable law therein."
 
 
 28
 We have examined various authorities cited by GE but find none of them dispositive of the matter before us. We hold that since the expiration of the bargaining contract on October 2, 1966, there has not existed the "actual controversy" requisite to invoke the Declaratory Judgment Act, 28 U.S.C. § 2201.
 
 
 29
 Upon such ruling, the proper procedure for us to follow is to remand the matter to the District Court with direction to vacate the findings of fact and the judgment and to dismiss the cause. Duke Power Co. v. Greenwood Co., 299 U.S. 259, 267, 57 S.Ct. 202, 81 L.Ed. 178 (1936); United States v. Munsingwear, Inc., 340 U.S. 36, 39-40, 71 S.Ct. 104, 95 L.Ed. 36 (1950); Nat'l Bible Knowledge Ass'n, Inc. v. Dumont Broadcasting Corp., 99 U.S.App.D.C. 254, 239 F.2d 74, 75 (1956). It is so ordered.
 
 
 30
 Both parties shall pay their respective costs of the appeal and the costs in the District Court shall be as ordered by the District Judge.
 
 
 
 Notes:
 
 
 [1]
 International Union of Electrical, Radio and Machine Workers, AFL-CIO, and that union's Local 761
 
 
 [2]
 The United States District Court for the Western District of Kentucky
 
 
 [3]
 The collective bargaining agreement provided a grievance procedure, but after such procedure had been exhausted at all three of its steps, arbitration was not required for settlement of the kind of dispute here involved. The employees were then at liberty to strike. Grievances which had been processed through all of the steps without settlement were referred to as "exhausted grievances."
 
 
 [4]
 Article XXI of the 1963-66 GE-IUE (AFL-CIO) National Agreement provides that "After the effective date of this agreement, new local understandings will be recognized and made effective only where set forth in writing and signed by local management and the Local, and approved by the Company and the Union [Union is defined as the International]." Article XIII indicates, however, that at step Two of the Grievance Procedure, management and the Local may "settle" grievances without referral to the International
 
 
 [5]
 This proceeding was the product of the Local's charge that GE had illegally refused to bargain with it during the March, 1966, work stoppage