766 F.2d 228
 15 Envtl. L. Rep. 20,693
 The STATE OF OHIO, ex rel., Anthony J. CELEBREZZE, Jr.,
Attorney General, Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF TRANSPORTATION and the Materials
Transportation Bureau, Defendants-Appellees.
 No. 84-3292.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 30, 1985.
Decided June 27, 1985.
 
 E. Dennis Muchnicki (argued), Asst. Atty. Gen., Environmental Law Section, Karen A. Kolmacic, Columbus, Ohio, for plaintiff-appellant.
 Carla D. Moore, U.S. Atty., Cleveland, Ohio, John J. Powers, III, Robert J. Wiggers (argued), Antitrust Div. 3313 & 3414, Dept. of Justice, Washington, D.C., for defendants-appellees.
 Before ENGEL and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 PHILLIPS, Senior Circuit Judge.
 
 
 1
 This appeal presents the question of whether the State of Ohio has standing to seek judicial review of a federal regulation which by its terms preempts a State statute. The Ohio statute, Section 4163.07 of the Ohio Rev.Code, requires prenotification of shipment into or through the State of any large quantity of special nuclear material or by-product material.
 
 
 2
 In the administration of the Hazardous Materials Transportation Act, 49 U.S.C. Secs. 1801-1812 (hereinafter "HMTA"), the Materials Transportation Bureau ("the Bureau") of the United States Department of Transportation ("the Department") issued regulations governing the highway routing of radioactive materials, 46 Fed.Reg. 5298. At the same time the Bureau published a "statement of policy" as Appendix A to 49 C.F.R. Part 177, providing, among other things, that State laws requiring prenotification regarding shipments of such materials are preempted by the federal regulations.
 
 
 3
 The State of Ohio filed this action seeking declaratory judgment that the "statement of policy" in the regulation contained in Appendix A is procedurally and substantively invalid.
 
 
 4
 The district court dismissed the action for lack of jurisdiction on the ground that the State of Ohio does not have standing to maintain this suit under the averments of the complaint. The State of Ohio appeals. We reverse and remand.I.
 
 
 5
 Section 4163.07 of the Ohio Rev.Code Ann., effective July 14, 1980, provides as follows:
 
 
 6
 Sec. 4163.07 [Notification prior to shipment of nuclear materials into or through the state.]
 
 
 7
 (A)(1) Prior to transporting any large quantity of special nuclear material or by-product material into or through the state, the carrier or shipper of such material shall notify the director of the disaster services agency of such shipment. The notice shall be in writing, be sent by certified mail, and shall include the name of the shipper; the name of the carrier; the type and quantity of the special nuclear material or by-product material; the transportation mode of the shipment; the proposed date and time of shipment of such material into or through the state; and the starting point, termination or exit point, scheduled route, and each alternate route, if any, of the shipment. In order to constitute effective notification under this subdivision, notification must be received by the director at least forty-eight hours prior to entry of the shipment into the state.
 
 
 8
 (2) The carrier or shipper of any shipment subject to this division shall immediately notify the director of any change in the date and time of the shipment or in the route of the shipment into or through the state.
 
 
 9
 (B) Upon receipt of a notice of any shipment of a large quantity of special nuclear material or by-product material into or through the state, the director of the disaster services agency shall immediately notify the director of highway safety, the director of environmental protection, the chairman of the public utilities commission, and the sheriff of each county along the proposed route, or any alternate route, of the shipment.
 
 
 10
 (C) The director of the disaster services agency shall not disclose to any person other than those persons enumerated in division (B) of this section any information pertaining to any shipment of special nuclear material or by-product material prior to the time that any such shipment is completed.
 
 
 11
 (D) This section does not apply to radioactive materials, other than by-products, shipped by or for the United States department of defense and the United States department of energy. Nothing in this section shall require the disclosure of any defense information or restricted data as defined in the "Atomic Energy Act of 1954," 68 Stat. 919, 42 U.S.C. 2011, as amended.
 
 
 12
 (E) No person shall transport or cause to be transported into or through the state any large quantity of special or by-product material without first providing the notice required in division (A) of this section.
 
 
 13
 Section 4163.99 makes violation of Section 4163.07[E] "a felony of the third degree." The current penalty, absent any prior conviction for an offense of violence, is a fixed prison term of one or two years and a fine of not more than $5,000. Ohio Rev.Code Ann. Sec. 2929.11(C)(3)(D)(1).
 
 
 14
 The HMTA, 49 U.S.C. Secs. 1801-1812, enacted in January 1975, was intended by Congress "to improve the regulatory and enforcement authority of the Secretary of Transportation to protect the Nation adequately against the risks to life and property which are inherent in the transportation of hazardous materials in commerce." 49 U.S.C. Sec. 1801. It authorizes the Secretary of the Department to designate the quantity and form of materials that would constitute an unreasonable risk, 49 U.S.C. Sec. 1803, and to issue regulations for safe transportation and handling of hazardous materials, 49 U.S.C. Secs. 1804, 1805, including regulation of routing the Secretary deems appropriate, 49 U.S.C. Sec. 1804(a).
 
 
 15
 Congress provided that "any requirement, of a State or political subdivision thereof, which is inconsistent with any requirement set forth in this chapter, or in a regulation issued under this chapter, is preempted." 49 U.S.C. Sec. 1811(a). The statute established a procedure for avoiding preemption of certain types of inconsistent State requirements where the Secretary determines the law protects the public at least as well as the federal regulations and "does not unreasonably burden commerce," 49 U.S.C. Sec. 1811(b). Responsibility for promulgating regulations and determining preemption has been delegated to the Bureau.
 
 
 16
 The procedures for making inconsistency and nonpreemption determinations were set forth at 41 Fed.Reg. 38167-38179 (September 9, 1976), 49 C.F.R. Part 107. New York City had amended its health code in 1976 to prohibit highway transportation of radioactive materials through the City. The Department considered whether New York's ordinance was preempted by the HMTA and concluded that it was not preempted because the Department had not adopted any routing requirements.
 
 
 17
 The Department issued an advance notice of proposed rulemaking on August 17, 1978 asking for views of interested parties concerning whether the Department and Bureau should adopt a routing regulation. 43 Fed.Reg. 36492 (August 17, 1978). More than 550 comments from interested groups and State and local governments were received. Most of the 19 commenting States favored a general routing rule with provision for State input, while the 17 local governments commenting opposed federal interference with local laws and the transportation of radioactive materials through their jurisdictions. 45 Fed.Reg. 7141 (Jan. 31, 1980).
 
 
 18
 The Brief of the Department states that "Motor carriers and shippers, on the other hand, sought federal and state preemption of inconsistent state and local laws." See 45 Fed.Reg. at 7140-41.
 
 
 19
 In its proposed regulations, the Bureau resolved the dispute in favor of motor carriers and shippers and against the States. Ohio filed comments with the Bureau contending that the prenotification requirement of Ohio Rev.Code Sec. 4163.07 should not be deemed inconsistent or preempted. Members of the nuclear and transportation industries urged adoption of the proposed preemption rule. On January 19, 1981 the Department and Bureau issued their final rule concerning the routing of radioactive materials, published in 46 Fed.Reg. 5298, 5317. The Department adopted general requirements of driver training and routing, designating the interstate highway system, and routes designated by State agencies, as the appropriate routes for transporting radioactive materials. 46 Fed.Reg. at 5298. Appendix A provided that a State or local rule is inconsistent with the regulation if it requires prenotification. 46 Fed.Reg. at 5317.
 
 II.
 
 20
 The State of Ohio sought a declaratory judgment in the district court that the interpretative ruling contained in Appendix A, as it affected Sec. 4163.07 of the Ohio Revised Code, was arbitrary, capricious, unreasonable, in excess of statutory authority, unlawful, erroneous and violative of Ohio's procedural rights under the Administrative Procedure Act, 5 U.S.C. Sec. 701 et seq. and under the regulations of the Department and Bureau. The Department filed a motion to dismiss on numerous grounds, including an allegation that the State lacked standing to seek judicial review of Appendix A. The State then filed an amended complaint which is set forth as an appendix to this opinion. The Department then filed a motion to dismiss the amended complaint.
 
 III.
 
 21
 In granting the motion of defendants to dismiss the amended complaint for want of subject matter jurisdiction and lack of standing, the district court held:
 
 
 22
 The court finds that the State of Ohio's contention is not sufficient to establish the necessary case in controversy required by Article III of the United States Constitution. The injury which the plaintiff has envisioned is not an immediate or threatened injury which would provide the requisite jurisdiction to this court.
 
 
 23
 The Supreme Court has explained the basis of the doctrine of standing as follows:The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."
 
 
 24
 Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978) (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)).
 
 
 25
 The judicial power of federal courts in Article III of the Constitution extends only to cases and controversies. The requirements of standing, ripeness, and mootness guard against the issuing of advisory opinions. A plaintiff must point to some harm the defendant has inflicted or is about to inflict on him, and that is susceptible to judicial remedy through an award of damages or equitable relief. Warth v. Seldin, 422 U.S. 490, 498-99 & n. 10, 95 S.Ct. 2197, 2204-2205 & n. 10, 45 L.Ed.2d 343 (1975); Allstate Insurance Company v. Wayne County, 760 F.2d 689 (6th Cir., 1985). The plaintiff must allege "that the challenged action has caused him injury in fact, economic or otherwise," Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). See also Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). A party who shows that it has suffered "actual or threatened injury, as a result of the putatively illegal conduct of the defendant" has standing. See Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). Standing requires that the asserted interest of a party be "within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Camp, 397 U.S. at 153, 90 S.Ct. at 830.
 
 
 26
 The Department contends that Ohio has not alleged a sufficient injury to establish standing. Ohio stresses that it is enforcing its prenotification statute and "there is nothing hypothetical or tentative about its posture." It asserts that its right to enforce the State prenotification statute is harmed by the Department's declaration of policy in Appendix A that prenotification statutes are preempted. Ohio contends that both the enactment of the State statute and the policy of the Department are final decisions, and that there is sufficient "concrete adverseness" to confer standing.
 
 
 27
 The Supreme Court has held that the scope of newly created statutory rights must be broadly construed. In Association of Data Processing Service Organizations, Inc., v. Camp, 397 U.S. 150, 154-55, 90 S.Ct. 827, 830-31, 25 L.Ed.2d 184 (1970), the Court wrote:
 
 
 28
 Where statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action. The whole drive for enlarging the category of aggrieved "persons" is symptomatic of that trend.
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 In that tradition was Hardin v. Kentucky Utilities Co., 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787, which involved a section of the TVA Act designed primarily to protect, through area limitations, private utilities against TVA competition. We held that no explicit statutory provision was necessary to confer standing, since the private utility bringing suit was within the class of persons that the statutory provision was designed to protect. (emphasis added)
 
 
 32
 Ohio asserts that it is within the zone of interest created by the reservation in the HMTA, 49 U.S.C. Sec. 1811, granting States the authority to develop their own schemes for regulation of hazardous materials transportation as long as the State scheme is not inconsistent with the federal requirements imposed pursuant to the HMTA. It argues that the Department has created an overly broad preemptive effect.
 
 
 33
 This Court concludes that since Ohio is litigating the constitutionality of its own statute, duly enacted by the Ohio General Assembly, Ohio has a sufficient stake in the outcome of this litigation to give it standing to seek judicial review of the rule making action of the U.S. Department of Transportation and its Materials Transportation Bureau. The threatened injury to a State's enforcement of its safety laws is within the zone of interests of the Administrative Procedure Act and the Hazardous Materials Transportation Act. The effective enforcement of the Ohio statute requiring prenotification of shipments of radioactive materials necessarily is endangered and rendered uncertain by the formal position of the Department that the Ohio statute is preempted. Ohio has standing to challenge the Department's regulation and undertake to vindicate its own law.
 
 
 34
 The decision of the district court is reversed and the case is remanded to the district court. No costs are taxed. The parties will bear their own costs in this Court.
 
 APPENDIX A
 
 35
 UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO
 
 
 36
 State of Ohio, ex rel. William J. Brown Attorney General of
 
 
 37
 Ohio 30 East Broad Street Columbus, OH 43215, Plaintiff,
 
 
 38
 vs.
 
 
 39
 United States Department of Transportation 400 Seventh
 
 
 40
 Street S.W. Washington, D.C. 20590 and Materials
 
 
 41
 Transportation Bureau, United States Department of
 
 
 42
 Transportation 400 Seventh Street S.W. Washington, D.C.
 
 
 43
 20590, Defendants.
 
 Case No. C81-1394
 PLAINTIFF'S FIRST AMENDED COMPLAINT
 
 44
 Plaintiff, State of Ohio, by its Attorney General, William J. Brown, for its complaint herein alleges as follows:
 
 NATURE OF THE ACTION
 
 45
 1. This is an action brought by the State of Ohio seeking a declaratory judgment that certain provisions in Appendix A of 49 C.F.R. Part 177 of regulations of the United States Department of Transportation, and the Materials Transportation Bureau as adopted on January 19, 1981, 46 Federal Register 5298-5318, are in violation of the Hazardous Materials Transportation Act, 49 U.S.C. Sec. 1801, et seq., The Administrative Procedure Act, 5 U.S.C. Sec. 701 et seq., the Secretary of Transportation's own regulations for Preemption and Enforcement Procedures, 49 C.F.R. Part 107, and the Tenth Amendment of the United States Constitution, and are therefore of no force and effect, and injunctive relief restraining the Defendants from relying on or applying the provisions of Appendix A to which this Complaint is directed.
 
 JURISDICTION
 
 46
 2. This Court's jurisdiction to hear this action is based upon 28 U.S.C. Sec. 1331 (Federal Question); 28 U.S.C. Sec. 1337 (Laws Relating to Interstate Commerce); and 5 U.S.C. Sec. 703 (Administrative Procedure Act).
 
 VENUE
 
 47
 3. This Court's venue is established by 28 U.S.C. Sec. 1391(e).
 
 PARTIES
 
 48
 4. The State of Ohio is a state of the United States whose General Assembly has adopted a statute, Section 4163.07 of the Ohio Revised Code, which requires prenotification of the shipment into or through the state of any large quantity special nuclear material or by-product material, and a provision in its Constitution, Article XVIII, Section 3, which authorizes municipalities to exercise all powers of self-government including the exercise of police power authority.
 
 
 49
 5. Defendant United States Department of Transportation (hereinafter "U.S. DOT") is the department of the United States government whose Secretary is authorized to administer the Hazardous Materials Transportation Act (hereinafter "HMTA"), 49 U.S.C. 1801, et seq. and to adopt regulations for the implementation of the HMTA. Defendant Materials Transportation Bureau (hereinafter "MTB") is a bureau within the U.S. DOT to which the Secretary of DOT has delegated the authority to adopt and administer the regulations at issue in this case. U.S. DOT and MTB shall hereinafter be referred to as "the Defendants".
 
 GENERAL ALLEGATIONS
 
 50
 6. On January 31, 1980, the Defendants issued a "notice of proposed rulemaking" to amend 49 C.F.R. Parts 173 and 177 to establish, inter alia, a nationally uniform proposal for the highway routing of radioactive materials and which was designated Docket No. HM-164. See 45 Federal Register 7140-7153 (January 31, 1980).
 
 
 51
 7. On December 12, 1980, the State of Ohio, by its Attorney General, William J. Brown, filed with the Defendants its comments upon the proposed regulations which regulations were designated Docket No. HM 164.
 
 
 52
 8. On January 19, 1981, the Defendants issued the final rule in the proceeding which was designated Docket No. HM-164. See 46 Federal Register 5298-5318 (January 19, 1981). The final regulation contains an Appendix A which is an addition to 49 C.F.R. Part 177. Subsection VI of the Appendix declares that State or local transportation rules which require the filing of route plans for individual shipments of radioactive materials and prenotification of such shipments are deemed to be inconsistent with the regulations adopted as part of Docket No. HM-164. In subsection III(B), the Appendix declares that any local routing rule is deemed to be inconsistent with the routing regulation adopted as part of Docket No. HM-164 if it prohibits or otherwise affects transportation on routes or at locations either authorized by Part 177 or authorized by a state routing agency in a manner consistent with Part 177.
 
 
 53
 9. 49 U.S.C. Sec. 1811(a) provides that any requirement of a State or political subdivision thereof which is inconsistent with any requirement set forth in the HMTA or in a regulation adopted thereunder is preempted. Sec. 1811(b) provides the Secretary of Transportation with the authority to determine that an inconsistent state or local requirement is not preempted if certain criteria are met.
 
 
 54
 10. Section 4163.07 of the Ohio Revised Code requires any transporter of any large quantity of special nuclear material or by-product material into or through Ohio to notify the Director of the Disaster Services Agency at least forty-eight (48) hours prior to the entry of the shipment into Ohio and to provide certain information about the shipment with that notification.
 
 
 55
 11. Article XVIII, Section 3 of the Constitution of the State of Ohio reads as follows:
 
 
 56
 Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.
 
 
 57
 12. Plaintiff is injured, adversely affected and aggrieved by Defendants' action as described in Paragraph 8 of this Complaint and Plaintiff has suffered legal wrong from Defendants' action because: (1) Defendants' declarations of inconsistency as alleged in this Complaint encourages [sic] persons subject to Ohio Revised Code Section 4163.07 and/or to ordinances adopted by municipalities of the State of Ohio pursuant to the authority conferred upon them by Article XVIII, Section 3 of the Ohio Constitution to violate said section of the Revised Code and/or municipal ordinances; (2) Defendants' declaration of inconsistency serves as a defense to liability for those who, as a result of good faith reliance upon Defendants' declaration of inconsistency, violate Ohio Revised Code Section 4163.07 or the ordinances of Ohio municipalities enacted pursuant to Article XVIII, Section 3 of the Ohio Constitution; and (3) Plaintiff has been deprived of the procedural protections provided by Defendants' own rules concerning inconsistency determinations, 49 C.F.R. Part 107.
 
 
 58
 13. The allegations of paragraphs one (1) through twelve (12) of this Complaint are specifically incorporated into each of the following counts as if fully set forth therein.COUNT I
 
 
 59
 14. 49 U.S.C. Sec. 1801 of the HMTA declares a Congressional policy "... to protect the Nation adequately against the risks to life and property which are inherent in the transportation of hazardous materials in commerce."
 
 
 60
 15. Part 177, Appendix A, Section VI, (D) and (E) is an ultra vires exercise of the Defendants' authority under the HMTA because the determination that state prenotification is inconsistent with the use of the interstate highway system is unrelated to the Congressional policy as alleged in paragraph fourteen (14) of this Complaint. The effect of the determination is to excuse the radioactive materials transporters from state and local prenotification requirements without adopting an equivalent federal requirement so as to further the Congressional policy as alleged in paragraph fourteen of this Complaint.
 
 COUNT II
 
 61
 15. Defendants have established at 49 C.F.R. Part 107 a procedure for making and issuing inconsistency rulings as to whether the regulatory requirements of a State or political subdivision thereof are inconsistent with the requirements of the HMTA and the regulations adopted thereunder.
 
 
 62
 16. Defendants' regulations at 49 C.F.R. Part 107 do not authorize generic determinations of inconsistency but rather require such determinations to be made with regard to "a particular State or political subdivision requirement." 49 C.F.R. 107.207(b).
 
 
 63
 17. Defendants have made no specific determination that the prenotification required by Ohio Revised Code Section 4163.07 is inconsistent with the requirements of the HMTA, but rather have made a generic determination encompassing statutes such as Section 4163.07.
 
 
 64
 18. The Defendants' generic determination in Part 177, Appendix A, Sections III and VI, (D) and (E) that state prenotification statutes such as Ohio Revised Code Section 4163.07 and municipal regulations enacted pursuant to Article XVIII, Section 3 of the Ohio Constitution are inconsistent with the HMTA and the regulations adopted thereunder is unlawful because it violated the Defendants' own regulation, 49 C.F.R. Part 107, establishing procedures for the making and issuance of inconsistency rulings.
 
 COUNT III
 
 65
 19. Defendants' own regulation 49 C.F.R. Sec. 107.209(d) requires an inconsistency ruling to include a written statement setting forth the relevant facts upon which the ruling is based.
 
 
 66
 20. Defendants' determination at 49 C.F.R. Part 177, Appendix A Sections III and VI, (D) and (E) that state prenotification statutes such as Ohio Revised Code Section 4163.07 are inconsistent with the HMTA and the regulations adopted thereunder is not supported by a written statement setting forth the relevant facts upon which the inconsistency ruling is based in violation of 49 C.F.R. Sec. 107.209(d).
 
 COUNT IV
 
 67
 21. The Defendants have established at 49 C.F.R. Sec. 107.209(c) the factors to be considered in determining whether the requirements of a State or political subdivision are inconsistent with the HMTA and the regulations adopted thereunder.
 
 
 68
 22. Defendants' determination at 49 C.F.R. Part 177, Appendix A, Sections III and VI (D) and (E) that state prenotification statutes such as Ohio Revised Code Section 4163.07 municipal regulations enacted pursuant to Article XVIII, Section 3 of the Constitution of Ohio are inconsistent with the HMTA and the regulations adopted thereunder based upon consideration of the factors specified at 49 C.F.R. Sec. 107.209(C) or any other lawful considerations is arbitrary, capricious and unwarranted by the facts in violation of the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A) and (F).
 
 COUNT V
 
 69
 23. At 49 C.F.R. Part 177, Appendix A, Section III, Defendants declare any transportation or routing rule adopted by a political subdivision of a state including municipalities, counties or other units of local government to be inconsistent with the HMTA and the regulations adopted thereunder if it affects transportation on routes authorized by Part 177 or by a State routing agency in a manner consistent with Part 177.
 
 
 70
 24. The people of the State of Ohio, pursuant to Article XVIII, Section 3 of the Ohio Constitution, the "Municipal Home Rule Amendment", have authorized municipalities to exercise all powers of local self-government including the enacting of police power regulations.