59 F.3d 170
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Lowell and Malissa EDWARDS, Plaintiffs-Appellees,
v.
Mike ARMSTRONG, individually and as Mayor; City of Louisa,
Kentucky; and the City Council of Louisa,
Kentucky, Defendants-Appellants.
 No. 93-5665.
 United States Court of Appeals, Sixth Circuit.
 June 30, 1995.
 
 Before: RYAN and BOGGS, Circuit Judges; and ROSEN, District Judge*
 PER CURIAM.
 
 
 1
 Plaintiffs timely appeal the district court's dismissal of their Sec. 1983 suit on the grounds that the Cable Communications Policy Act of 1984, as amended by the Cable Television Consumer Protection and Competition Act of 1992,[1] P.L. No. 102-385, 106 Stat. 1460 (1992), forecloses[2] resort to 42 U.S.C. Sec. 1983. We affirm the decision of the district court, but on different grounds. We hold that the current Act forecloses only Sec. 1983 suits for monetary damages, but dismiss plaintiffs' remaining claims for injunctive and declaratory relief under Sec. 1983 because no case or controversy now exists between the Edwardses and the City, now that the Edwardses have sold the cable system to others.
 
 
 2
 * In 1971, Lowell and Malissa Edwards received a license to provide cable television service to the city of Louisa, Kentucky ("the City") for twenty years. The City adopted Ordinance 91-2 in April 1991, establishing guidelines and procedures for awarding non-exclusive franchises and governing the operation of cable TV systems within the City. Section 4(e) of the ordinance mandated that licensed systems offer customers thirty-eight specific channels at the prices listed in the ordinance.[3] Defendants admit that this arrangement abridges the First Amendment. See 47 U.S.C. Sec. 544(b)(2)(B) ("[T]he franchising authority ... may establish requirements for facilities and equipment, but may not ... establish requirements for video programming ....").
 
 
 3
 The Edwardses applied for another twenty-year franchise on May 29, 1991, with a one-page proposal asking for "said renewal ... upon and subject to the same terms and conditions as the said existing franchise." Their "application" also requested a public hearing, but did not satisfy any of the requirements of Ordinance 91-2. After a hearing, the City denied the Edwardses' request because the cable service failed to meet the City's quality standards. In addition to the Edwardses' failure to submit an application in conformity with Ordinance 91-2, the City cited their "erratic and minimal" payment of fees since 1981, numerous complaints about their service, and their failure to submit statements of their financial and technical competence and ability to meet the community's future needs. The City gave the Edwardses leave to file an amended application to correct the shortcomings, but they do not appear to have done so.
 
 
 4
 The Edwardses claim that they were denied the license because they refused to provide the specific programming dictated in Sec. 4(e). They sued the mayor, the City, and the City Council (collectively, "defendants"), seeking to enjoin enforcement of Sec. 4(e) and to require defendants to grant the renewal, as well as compensatory and punitive damages under 42 U.S.C. Sec. 1983. The Edwardses allege violations of their First, Fifth, and Fourteenth Amendment rights, in addition to several claims under state law.
 
 
 5
 After cross-motions for summary judgment, the district court dismissed the Edwardses' suit in an order dated January 28, 1993. The court found that Congress had "preempted" Sec. 1983 suits in the 1984 Act:
 
 
 6
 Congress had created a carefully tailored scheme for governing cable TV, and has also provided specific remedies for aggrieved cable system operators ... the operator may seek appropriate relief in federal court. Recovery under Sec. 1983 is inconsistent with recovery under the Act.
 
 
 7
 First Dismissal Order at 1. The court also noted that Congress had recently limited the remedies available under the 1984 Act to injunctive and declaratory relief by enacting the 1992 Amendments, further precluding the Edwardses' claims.
 
 
 8
 The Edwardses subsequently moved the court to vacate or, in the alternative, reconsider its dismissal of their claims. They supported this motion with a memorandum arguing the same three issues that are now before this court. The district court responded to the Edwardses' motions in its April 7, 1993, Memorandum and Order. The court again held that, as a carefully tailored regulatory scheme, the Cable Act "preempted" Sec. 1983 actions, citing Smith v. Robinson, 468 U.S. 992 (1984). The court distinguished the cases offered by the Edwardses as predating the 1992 Amendments to the 1984 Act, which significantly altered the statute by precluding monetary damages in suits arising from a refusal to renew a cable franchise. The court also dismissed the Edwardses' claims for injunctive and declaratory relief because they failed to plead a cause of action under the cable statutes.
 
 
 9
 Plaintiffs timely appeal. On this appeal, defendants argue that plaintiffs' claims for injunctive and declaratory relief are moot because the Edwardses have sold their interest in the cable system in 1993 to Louisa Cable TV; the Edwardses do not dispute that the sale occurred. In fact, a suit between the City and Louisa Cable TV on similar issues has already been adjudicated in the Eastern District of Kentucky (Opinion and Order, Case No. 93-278, Dec. 21, 1994).
 
 II
 
 10
 The Cable Act does not foreclose all Sec. 1983 suits because it does not provide a comprehensive remedial scheme for the protection of federal rights. Section 1983 provides a private cause of action for violations of federal statutes as well as constitutional rights, Maine v. Thiboutot, 448 U.S. 1 (1980), and its coverage must be broadly construed. Golden State Transit v. City of Los Angeles, 493 U.S. 103, 105 (1989). Assuming that a federal right has been violated, a defendant may show that Congress specifically foreclosed Sec. 1983 liability "by express provision or other specific evidence from the statute itself." Id. at 108; Wright v. Roanoke Redevelopment and Hous. Auth., 479 U.S. 418, 423 (1981). The burden to show that Congress has withdrawn the Sec. 1983 remedy is squarely on the defendant. Golden State, 493 U.S. at 107; Wright, 479 U.S. at 423.
 
 
 11
 Absent explicit language foreclosing Sec. 1983 liability, implicit repeal by a statute is possible, but is disfavored and should be "tolerated only to the extent necessary to resolve clear repugnancy between statutes." Smith, 468 U.S. at 1026 (Brennan, Marshall and Stevens, JJ., dissenting), citing Radzanower v. Touche Ross & Co., 426 U.S. 148, 154 (1976). "Absent an intolerable or irreconcilable conflict between two statutes, a court need not decide whether one controls over the other or whether the later one impliedly repeals the earlier one." Earwood v. Norfolk S. Ry., 845 F. Supp. 880, 885 (N.D. Ga. 1993), citing Atchison, T. & S. Fe Ry. v. Buell, 480 U.S. 557, 566-67 (1987).
 
 
 12
 The rarest basis of implied foreclosure (and the one which the district court invoked) is that "Congress 'specifically foreclosed a remedy under Sec. 1983' ... by providing a 'comprehensive enforcement mechanism[] for protection of a federal right' ... such that '[a]llowing a plaintiff' to bring a Sec. 1983 action 'would be inconsistent with Congress' carefully tailored scheme."' Golden State, 493 U.S. at 106-07, quoting Smith, 468 U.S. at 1005, 1003, 1012. However, the district court's conclusion that the Cable Act's remedies are inconsistent with Sec. 1983 liability is not the same as determining that Congress intended to foreclose resort to Sec. 1983; "it is not enough to show that two statutes produce differing results when applied to the same factual situation, for that no more than states the problem." Radzanower, 426 U.S. at 155. Congress often regulates the same activity in a myriad of statutes, but a lack of legislative coherence is not tantamount to repeal.
 
 
 13
 Supreme Court precedent shows that the Cable Act is not a sufficiently "comprehensive enforcement mechanism" or "carefully tailored scheme," leaving no room for private remedies. The availability of a detailed administrative mechanism or regulatory scheme is not enough to indicate that Congress intended to preclude resort to Sec. 1983; a statute's remedial provisions must supplant Sec. 1983. Golden State, 493 U.S. at 106.
 
 
 14
 "On only two occasions ha[s] [the Court] found a remedial scheme established by Congress sufficient to displace the remedy provided in Sec. 1983." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 520 (1990) (discussing Smith v. Robinson, 468 U.S. 992, and Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 20-21 (1981)). The Court first held in Sea Clammers that the express remedies of the Federal Water Pollution Control Act Amendments of 1972 and the Marine Protection, Research, and Sanctuaries Act of 1972, as well as the existence of two citizen-suit provisions, supplanted Sec. 1983 remedies.
 
 
 15
 Analogously, in Smith v. Robinson, the Court held that the Education of the Handicapped Act ("EHA") barred a 42 U.S.C. Sec. 1988 claim for attorneys' fees because "Congress intended the EHA to be the exclusive avenue through which a plaintiff may assert [a constitutional] claim." 468 U.S. at 1009. The EHA established a detailed framework of hearings, procedural safeguards, and a right to judicial review to ensure that handicapped children would not be denied a free appropriate education; the Court further found that the EHA required a plaintiff to exhaust these administrative remedies. Id. at 1010-11.
 
 
 16
 In contrast, the Court failed to find a foreclosing scheme in several statutes much more detailed and comprehensive than the Cable Act. The Court held in Wilder v. Virginia Hosp. Ass'n that the administrative remedies found in the voluminous Medicaid Act, 42 U.S.C. Sec. 1396 et seq. (1982 ed. and Supp. V), were not "sufficiently comprehensive to demonstrate a congressional intent to withdraw the private remedy of Sec. 1983." 496 U.S. 498, 522 (1990); see Wood v. Tompkins, 33 F.3d 600, 612 (6th Cir. 1994) (finding no implied foreclosure because Medicaid provisions "are no more comprehensive now than they were in Wilder.").
 
 
 17
 Similarly, in Golden State Transit v. City of Los Angeles, the Court held that the far-reaching provisions of the National Labor Relations Act ("NLRA") did not foreclose a Sec. 1983 remedy. The defendant in Golden State had violated federal law by conditioning renewal of the plaintiff's taxicab franchise upon the settlement of a pending labor dispute. 493 U.S. at 104. Although the NLRA conferred exclusive jurisdiction over labor disputes upon the National Labor Relations Board ("NLRB") and preempted state law, the Court recognized that the NLRA lacked a "comprehensive enforcement scheme for preventing state interference with federally protected labor rights." Id. at 108-09.
 
 
 18
 Although a few Courts of Appeals have found additional cases of congressional foreclosure, few statutes are sufficiently comprehensive, remedial or carefully tailored to preclude Sec. 1983. The Fifth Circuit has held that the Age Discrimination in Employment Act is the exclusive remedy for age discrimination suits, thus superseding a cause of action under the NLRA. Britt v. The Grocer's Supply Co., 978 F.2d 1441 (5th Cir. 1992), cert. denied, 113 S. Ct. 2929 (1993). It, as well as the Fourth Circuit, has also held that the ADEA's exclusivity prevents Sec. 1983 liability as well. Hobbs v. Hawkins, 968 F.2d 471 (5th Cir. 1992) (distinguishing Golden State by noting that Congress specifically empowered the NLRB to supervise and safeguard union elections); Zombro v. Baltimore City Police Dept., 868 F.2d 1364 (4th Cir.), cert. denied, 493 U.S. 850 (1989). This circuit has discussed, without deciding, whether the Social Security Act withdraws Sec. 1983 claims. Wood v. Tompkins, 33 F.3d at 611-12; Carelli v. Howser, 923 F.2d 1208, 1213 (6th Cir. 1991) (avoiding the question by holding that plaintiffs had failed to state a cognizable claim).
 
 
 19
 The meager remedial provisions in the Cable Act do not approach meeting these stringent standards. Although the Cable Act in toto may be a comprehensive regulatory scheme, the two small provisions (Sec. 555 and Sec. 555(a)) concerning suits to challenge a franchise decision do not meet the standard for a comprehensive remedial scheme. The Cable Act pales in breadth and depth when compared to statutes such as the NLRA, ADEA, and Medicaid. The Cable Act involves pricing of cable services, obscenity, and many other telecommunications issues -- everything but a scheme for enforcing or remedying private rights against state actors. For similar reasons, the First Circuit declined to foreclose Sec. 1983 liability under the 1984 Act in Playboy Enters., Inc. v. Public Serv. Comm'n of Puerto Rico:
 
 
 20
 The sum of [the 1984 Act's] remedial provisions hardly creates a "comprehensive remedial scheme" leaving "no room for additional private remedies under Sec. 1983" .... [N]one of these provisions affords a remedy against state actors ... because the Cable Act's remedies are aimed either at private conduct regulated by the Act, or at the cable franchise authority.
 
 
 21
 906 F.2d 25, 33 (1st Cir.), cert. denied, 498 U.S. 959 (1990).
 
 
 22
 Nor is the Cable Act a "carefully tailored scheme." It does not create an administrative system for adjudicating claims (like Medicaid), invest a governing body with exclusive jurisdiction (like the NLRB), or require exhaustion of administrative remedies (like the ADEA). In fact, one court implied a private right of action under the 1984 Act precisely because the Act lacked procedures for reviewing adverse decisions, explaining that "the Supreme Court is more likely to allow a private remedy where Congress provides a benefit but does not provide access to any type of administrative process." Centel Cable Television Co. v. Admiral's Cove Assocs., Ltd., 835 F.2d 1359, 1363 (11th Cir. 1988).
 
 
 23
 Defendants' position that the 1984 Act preempted Sec. 1983 is further weakened by their admission that the 1992 Amendments were expressly intended to shield franchising authorities from Sec. 1983 litigation for damages. Defendants accurately note that the shadow of multimillion-dollar judgements loomed over local franchising authorities, spurring congressional action in the form of Sec. 555a (entitled "Limitation of franchising authority liability"). S. Rep. No. 92, 102d Cong., 2d Sess. 4, reprinted in 1992 U.S.C.C.A.N. 1133, 1182. The legislative history explicitly states that Congress drafted Sec. 555a with Sec. 1983 liability in mind. Ibid. Yet if our litigation was already foreclosed, Congress could not have intended to abrogate what it never thought existed. Clearly, the changes adopted in 1992 indicate that Congress had not previously precluded Sec. 1983 actions through the 1984 Act. Since the original version of the Cable Act did not withdraw Sec. 1983 liability, the current version can only preclude Sec. 1983 suits as a consequence of the 1992 Amendments. However, the addition of Sec. 555a and alteration of a few words in Sec. 555 did not suddenly transform the general 1984 Act into a comprehensive remedial scheme; even defendants concede that Sec. 555a prohibits solely Sec. 1983 suits for monetary damages.[4]
 
 
 24
 The cases cited by the Edwardses substantiate their contention that, at least prior to the 1992 Amendments, courts did not bar Sec. 1983 suits arising from the 1984 Act. See Playboy Enters., 906 F.2d at 32-33; Johnson v. City of Pleasanton, 781 F. Supp. 632 (N.D. Cal. 1991); Missouri Knights of the Ku Klux Klan v. Kansas City, Mo., 723 F. Supp. 1347 (W.D. Mo. 1989). Several other courts have entertained Sec. 1983 suits arising under the 1984 Act without addressing the issue of foreclosure. See Warner Cable Communications, Inc. v. City of Niceville, 911 F.2d 634 (11th Cir. 1990), cert. denied, 501 U.S. 1222 (1991); Cable Alabama Corp. v. City of Huntsville, 768 F. Supp. 1484 (N.D. Ala. 1991) (finding private cause of action under Sec. 1983 for violations of the 1984 Act); Group W Cable, Inc. v. City of Santa Cruz, 669 F. Supp. 954 (N.D. Cal. 1987).
 
 III
 
 25
 While conceding that Sec. 555a generally restricts legal challenges to those seeking equitable relief, the Edwardses argue that the statute does not bar suits where state actors violate specific provisions of the Cable Act. They contend that Congress only meant to prevent suits "arising solely from a mere refusal, without more, to grant a franchise ..." Therefore, they argue, the prohibition in Sec. 555a is inapplicable because "[t]his case is not a 'mere refusal' case, but rather one in which the refusal was accompanied by, and based upon, Defendants' blatant violation of a specific Cable Act prohibition, 47 US [sic] Sec. 544(b)(1)."
 
 
 26
 They offer no support for this argument, and it too must fail. The straightforward, encompassing and imperative language of Sec. 555a will not permit such a cramped reading:
 
 
 27
 In any court proceeding ... involving any claim against a franchising authority or other governmental entity ... arising from a ... decision of approval or disapproval with respect to a grant, renewal, transfer, or amendment of a franchise, any relief ... shall be limited to injunctive [and] declaratory relief.
 
 
 28
 47 U.S.C. Sec. 555a(a) (emphasis added). Further, the Edwardses' claim that their suit is based upon a violation of the Cable Act is belied by the complete absence of any reference to the Cable Act in their complaint.
 
 
 29
 Consequently, though the Cable Act bars damage suits, it continues to allow suits for injunctive and declaratory relief, and these aspects of the Edwardses' suit survive dismissal.
 
 IV
 
 30
 Nevertheless, the Edwardses' sale of their interest in the cable system divests them of standing to bring their claims for injunctive and declaratory relief.[5] Any dispute between the Edwardses and the City dissipated when they sold their interest in the cable system. "A plaintiff must point to some harm the defendant has inflicted or is about to inflict on him, and that is susceptible to judicial remedy through an award of damages or equitable relief." Celebrezze v. United States Dep't of Transp., 766 F.2d 228, 232 (6th Cir. 1985) (emphasis added). The sale of the cable franchise strips the Edwardses of a justiciable interest in this litigation. They can not seek a declaration that they are entitled to a franchise renewal when they in fact do not own a franchise.
 
 
 31
 The Edwardses, who lack a personal stake in the issue, may not assert the legal rights of the current owners:
 
 
 32
 The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."
 
 
 33
 Duke Power Co. v. Carolina Envtl. Study Group, 438 U.S. 59, 72 (1978), quoting Baker v. Carr, 369 U.S. 186, 204 (1962). Absent a financial interest in the cable system, the Edwardses are not genuinely adverse parties who would necessarily litigate the issues with full intensity.
 
 
 34
 The duty of a court "is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."' General Electric Co. v. Local 761, Int'l Union of Elec., Radio and Mach. Workers, 395 F.2d 891, 895 (6th Cir. 1968), quoting Mills v. Green, 159 U.S. 651, 653 (1895). Federal courts may not issue advisory opinions. Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803); Hayburn's Case, 2 U.S. (2 Dall.) 408 (1792). The resolution of a suit between the current owners of the local cable system, Louisa Cable TV, and the City only highlights the speculative and advisory nature of any judgment by this court. Additionally, a decision by the district court might constitute res judicata or collateral estoppel for crucial issues in this case. A decision by this court to grant or deny the Edwardses a license would be redundant, as well as a waste of judicial resources.
 
 V
 
 35
 The Edwardses also assert that we must vacate the district court's January 28, 1993, order because the court's ruling "was spontaneous, unexpected, entered by the court without hearing from the parties, and dismissed plaintiffs' claims upon the basis of a defense never raised by defendants." Although the specific legal foundation for the court's ruling may have been a surprise, the decision to grant summary judgment was foreseeable -- both parties had submitted several motions for summary judgment, as well as memoranda in support.
 
 
 36
 The cases cited by the Edwardses as examples of appellate courts reversing sua sponte dismissals by district courts, Haskell v. Washington Township, 864 F.2d 1266 (6th Cir. 1988), and Davis v. Bryan, 810 F.2d 42 (2nd Cir. 1987), are easily distinguished as involving statute of limitations issues. Under Rule 8(c) of the Federal Rules of Civil Procedure, a party must raise an affirmative defense based on the statute of limitations in the first responsive pleading; failure to do so waives the defense. Haskell, 864 F.2d at 1273; Davis, 810 F.2d at 44. A court thus commits error when it cures one party's waiver by ruling sua sponte.
 
 
 37
 The Sixth Circuit delineated the standard for sua sponte dismissals in Tingler v. Marshall, 716 F.2d 1109, 1112 (6th Cir. 1983):
 
 
 38
 [A] district court faced with a complaint which it believes may be subject to dismissal must: (1) allow service of the complaint upon the defendant; (2) notify all parties of its intent to dismiss the complaint; (3) give the plaintiff a chance to either amend his complaint or respond to the reasons stated by the district court ... (4) give the defendant a chance to respond ... and (5) if the claim is dismissed, state the reasons for the dismissal.
 
 
 39
 Although courts are reluctant to dismiss a case sua sponte, because it may prevent the parties from fully developing their cases or deprive them of sufficient notice of a court's intentions, these parties can make no such claim. The judgment was not premature because both sides had engaged in extensive discovery. Nor can plaintiffs claim surprise that the matter was ripe for summary judgment, since both parties had submitted memoranda supporting their positions.
 
 
 40
 Moreover, even if the district court should have informed the parties in advance of the allegedly novel basis for its decision, the Edwardses have not been materially prejudiced, because they had ample opportunity to correct any purported error when they moved to vacate and reconsider the court's first order of dismissal. The district court's Second Dismissal Order was issued only after both parties had briefed the preemption issue in their memoranda and reply briefs, thus curing any prior defect.
 
 VI
 
 41
 Because the Edwardses lack standing to seek equitable relief and because the 1992 Amendments to the 1984 Act preclude monetary liability, we AFFIRM the district court's dismissal of their Sec. 1983 suit.
 
 
 
 *
 The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 We will refer to the current Cable Communications Act, as amended, as "the Cable Act," the original Cable Communications Policy Act of 1984 as "the 1984 Act," and the Cable Television Consumer Protection and Competition Act of 1992 as "the 1992 Amendments."
 
 
 [2]
 The district court and both parties repeatedly use the term "preempted," but the word "foreclosure" is more appropriate. This case involves a conflict between two federal statutes, and the term "preemption" usually refers to federal-state conflicts
 
 
 [3]
 For example, thirteen channels were specified as "basic cable" at a maximum rate of $12/month; an additional twenty constituted "standard" cable with a $20 ceiling; and HBO, Cinemax, Showtime, The Movie Channel and Disney were designated "premium" channels, available in various combinations at prices listed in the statute
 
 
 [4]
 The legislative history suggests that attorneys' fees and legal costs continue to be recoverable under the Cable Act. S. Rep. No. 92, 102d Cong., 2d Sess. 4, reprinted in 1992 U.S.C.C.A.N. 1113, 1181, n.126 ("In [cases alleging that franchise fees violated the First Amendment] the monetary damages should be limited to attorney fees and legal costs.")
 
 
 [5]
 Although the Edwardses have not addressed the issues of standing and mootness in their briefs or in the proceedings below, an appellate court may consider questions of jurisdiction sua sponte. Community First Bank v. Nat'l Credit Union Admin., 41 F.3d 1050, 1053 (6th Cir. 1994); Newsome v. Batavia Local Sch. Dist., 842 F.2d 920, 922 (6th Cir. 1988)