**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 26, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

STATE OF WYOMING, ex rel.
Patrick J. Crank, Wyoming Attorney
General,

      Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA;
BUREAU OF ALCOHOL,
TOBACCO, FIREARMS, AND
EXPLOSIVES; CARL J. TRUSCOTT,
in his official capacity as Director of
Bureau of Alcohol, Tobacco, Firearms,
and Explosives; DAVID H.
CHIPMAN, in his official capacity as
Chief, Firearms Division, Bureau of
Alcohol, Tobacco, Firearms, and
Explosives,

      Defendants-Appellees,

GUN OWNERS FOUNDATION; THE
BRADY CENTER TO PREVENT
GUN VIOLENCE AND THE
NATIONAL CENTER FOR VICTIMS
OF CRIME,

      Amici Curiae.

No. 07-8046

**Appeal from the United States District Court**
**for the District of Wyoming**

C. Levi Martin, Senior Assistant Wyoming Attorney General (Patrick J. Crank, Wyoming Attorney General, with him on the brief), Cheyenne, Wyoming, for Plaintiff-Appellant.

Michael S. Raab (Peter D. Keisler, Assistant United States Attorney General, Matthew H. Mead, United States Attorney, Mark B. Stern, and Alexander K. Haas, with him on the briefs), Washington, D.C., for Defendants-Appellees.

Herbert W. Titus, John S. Miles, and William J. Olson, William J. Olson, P.C., McLean, Virginia, filed an Amicus Curiae brief for Gun Owners Foundation, in support of Plaintiff-Appellant.

Timothy M. Walsh and George R. Calhoun, V, Steptoe & Johnson LLP, Washington, D.C., filed an Amicus Curiae brief for The Brady Center and The National Center for Victims of Crime, in support of Defendant-Appellee.

Before **LUCERO, EBEL,** and **HOLMES**, Circuit Judges.

**EBEL**, Circuit Judge.

In 2004, the State of Wyoming enacted § 7-13-1501, which established a procedure to expunge misdemeanor convictions "for the purposes of restoring any firearm rights lost." Wyo. Stat. Ann. § 7-13-1501(a). The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), however, informed the Wyoming Attorney General that § 7-13-1501 would not restore federal firearm rights because the state statute did not satisfy the definition of "expunge" or "set aside" for the purposes of 18 U.S.C. § 921(a)(33)(B)(ii). The Wyoming Attorney General sought review of the ATF's interpretation of § 921(a)(33)(B)(ii) and § 7-

13-1501 in federal district court. The district court concluded that the ATF's interpretation was neither arbitrary nor capricious and thus dismissed Wyoming's suit.

After conducting our <u>de novo</u> review of these statutes, we conclude that Congress intended the terms "expunge" and "set aside" as used in § 921(a)(33)(B)(ii) to require a state procedure that <u>completely</u> removes the effects of the misdemeanor conviction in question. Accordingly, the district court properly dismissed Wyoming's claim because § 7-13-1501 falls short of this standard.

## I.

Title 18, section 922(g)(9) of the United States Code prohibits any person convicted of a misdemeanor crime of domestic violence from owning a firearm that has traveled in interstate commerce. The statute defines a misdemeanor crime of domestic violence as a misdemeanor pursuant to federal, state, or tribal law that incorporates, "as an element, the use or attempted use of physical force" against someone in a domestic relationship with the defendant. <u>Id.</u> § 921(a)(33)(A). The statute, however, excludes any misdemeanor conviction that has been expunged or set aside.[1] <u>Id.</u> § 921(a)(33)(B)(ii).[2]

---

[1]Section 921(a)(33)(B)(ii) states in full:
A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been

(continued...)

- 3 -

In light of this exception, in 2004, the Wyoming legislature established a

procedure to expunge convictions of domestic violence misdemeanors. <u>See</u> Wyo.

Stat. Ann. § 7-13-1501.[3]  If a person previously convicted of a misdemeanor

---

[1](...continued)
pardoned or has had civil rights restored (if the law of the applicable
jurisdiction provides for the loss of civil rights under such an
offense) unless the pardon, expungement, or restoration of civil
rights expressly provides that the person may not ship, transport,
possess, or receive firearms.
18 U.S.C. § 921(a)(33)(B)(ii).

[2] Sections 921 and 922 are part of the Gun Control Act, as amended.  <u>See</u>
Pub. L. No. 90-351, Title IV, § 902, 82 Stat. 197, 226–31.

[3] Section 7-13-1501 provides, in relevant part:
(a) A person who has pleaded guilty or nolo contendere to or been
convicted of a misdemeanor or misdemeanors arising out of the same
occurrence or related course of events may petition the convicting
court for an expungement of the records of conviction for the
purposes of restoring any firearm rights lost, subject to the following
limitations:

(i) At least one (1) year has passed since the expiration of the terms
of sentence imposed by the court, including any periods of probation
or the completion of any program ordered by the court;
(ii) Other than convictions arising out of the same occurrence or
related course of events, the petitioner has not previously pleaded
guilty or nolo contendere to or been convicted of a misdemeanor for
which firearm rights have been lost;
(iii) The misdemeanor or misdemeanors for which the person is
seeking expungement shall not have involved the use or attempted
use of a firearm.
. . .
(g) If the court finds that the petitioner is eligible for relief under this
section and that the petitioner does not represent a substantial danger
to himself, any identifiable victim or society, it shall issue an order
granting expungement of the applicable records. The court shall also
(continued...)

crime of domestic violence satisfies the criteria listed in the statute, the statute authorizes the state court to seal the records relating to the conviction. Id. § 7-13-1501(g). The statute specifically provides, however, that such an expunction is only "for the purposes of restoring any firearm rights lost." Id. § 7-13-1501(a); see also id. § 7-13-1501(k) ("An expungement granted pursuant to this section shall only be used for the purposes of restoring firearm rights that have been lost to persons convicted of misdemeanors. Nothing in this section shall be construed to affect the enhancement of penalties for second or subsequent convictions of misdemeanors under the laws of this state.").

This Wyoming expunction statute—if effective for the purposes of § 921(a)(33)(B)(ii)—would have three consequences. First, it would allow individuals with expunged convictions legally to possess firearms pursuant to 18 U.S.C. §§ 921(a)(33)(B)(ii) and 922(g)(9). Second, it would allow those individuals to apply for a Wyoming permit to carry a concealed weapon. See

<hr>

[3](...continued)
place the court files under seal, available for inspection only by order of that court. The court shall transmit a certified copy of the order to the division of criminal investigation.
. . .
(k) An expungement granted pursuant to this section shall only be used for the purposes of restoring firearm rights that have been lost to persons convicted of misdemeanors. Nothing in this section shall be construed to affect the enhancement of penalties for second or subsequent convictions of misdemeanors under the laws of this state.
Wyo. Stat. Ann. § 7-13-1501.

Wyo. Stat. Ann. § 6-8-104(b) (dictating that a permit may not be issued to any person who is ineligible to possess a firearm pursuant to 18 U.S.C. § 922(g)). Third, it would allow those individuals with a concealed-carry permit issued pursuant to Wyoming law to purchase firearms from a federally licensed firearm dealer without submitting to a background check. See 18 U.S.C. § 922(t)(3)(A) (declaring that a dealer is not required to request a background check before transferring a firearm if the transferee possesses a state permit).

In August 2004, after the Wyoming legislature enacted § 7-13-1501, the ATF sent the Wyoming Attorney General a letter indicating that the ATF determined that federal—not state—law governed the definition of "expunge" for purposes of 18 U.S.C. § 921(a)(33)(B)(ii), and that the Wyoming statute did not meet the federal definition. Thus, the ATF concluded that any person with a conviction expunged pursuant to Wyo. Stat. Ann. § 7-13-1501 would still face criminal liability pursuant to 18 U.S.C. § 922(g) for possessing a gun.

Approximately one year later, the ATF sent the Wyoming Attorney General another letter that reiterated its position and explained that the ATF would notify federally licensed firearm dealers that a Wyoming concealed-carry permit would no longer excuse a background check pursuant to 18 U.S.C. § 922(t)(3)(A). The Wyoming Attorney General responded with a letter contesting the ATF's conclusion that federal law governed the definition of expunge. In turn, the ATF gave Wyoming a choice: either bar individuals with convictions expunged

pursuant to § 7-13-1501 from obtaining concealed-carry permits, or draft legislation to fix the disparity between the federal definition of expunge and § 7-13-1501. If Wyoming failed to comply with one of these alternatives, the ATF indicated that it would require federally licensed firearm dealers to conduct background checks on all concealed-carry permit holders.[4] Wyoming refused to comply, and instead filed a suit in federal court seeking injunctive and declaratory relief.

After briefing by the parties, the district court determined that Wyoming had standing to bring the instant action, but held that § 7-13-1501 did not comply with the term "expunge" as set forth in 18 U.S.C. § 921(a)(33)(B)(ii). Thus, the district court dismissed the suit. The state of Wyoming now appeals.[5]

## II.

Before turning to the merits, we must address the threshold question of whether Wyoming has the requisite Article III and prudential standing to bring this suit. We review de novo questions of standing, New England Health Care Employees Pension Fund v. Woodruff, 512 F.3d 1283, 1288 (10th Cir. 2008), and

---

[4] Subsequently, the ATF modified its position, and removed the legislative fix option from the table. Thus, Wyoming's only option to comply with the ATF's demand was to exclude individuals with convictions expunged pursuant to § 7-13-1501 from the concealed-carry-permit program.

[5] Although Wyoming unsuccessfully presented an argument regarding the Tenth Amendment to the district court, it does not reassert that argument on appeal. Accordingly, Wyoming has waived that argument. State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

we must address Article III standing before conducting our prudential standing analysis, Mount Evans Co. v. Madigan, 14 F.3d 1444, 1451 (10th Cir. 1994).

**A.**

In its simplest terms, our Article III standing inquiry ensures that we limit our jurisdiction to "Cases" and "Controversies." Kan. Judicial Review v. Stout, 519 F.3d 1107, 1115 (10th Cir. 2008). In general, this inquiry seeks to determine "whether [the plaintiff has] 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'" Massachusetts v. EPA, 127 S. Ct. 1438, 1453 (2007) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). We determine whether the plaintiff has satisfied this general inquiry using three familiar requirements. Pursuant to Article III, to have standing, a plaintiff must demonstrate: (i) an injury in fact that is both concrete and particularized as well as actual or imminent; (ii) an injury that is traceable to the conduct complained of; and (iii) an injury that is redressable by a decision of the court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992); State ex rel. Sullivan v. Lujan, 969 F.2d 877, 880 (10th Cir. 1992).

In the context of the instant case, we must also keep in mind the Supreme Court's recent guidance that the States constitute a special class of plaintiffs for federal jurisdiction purposes. The Massachusetts Court stated that "[i]t is of

considerable relevance that the party seeking review here is a sovereign State and not, as it was in Lujan, a private individual." Massachusetts, 127 S. Ct. at 1454. In addition, the Court highlighted that "[w]ell before the creation of the modern administrative state, we recognized that States are not normal litigants for the purposes of invoking federal jurisdiction." Id.

With this in mind, we consider whether the familiar three-pronged standing analysis demonstrates that Wyoming's stake in this litigation is sufficiently adverse to the defendants to establish standing. Wyoming alleges that it has suffered an injury in fact because the ATF's interpretation of § 7-13-1501 undermines its ability to enforce its legal code. To remedy this alleged injury, Wyoming sought declaratory and injunctive relief. In light of the "special solicitude" the Massachusetts Court afforded to states in our standing analysis, id., and because our discussion below demonstrates that Wyoming's stake in this controversy is sufficiently adverse, we conclude that Wyoming has Article III standing.

The States have a legally protected sovereign interest in "the exercise of sovereign power over individuals and entities within the relevant jurisdiction[, which] involves the power to create and enforce a legal code." Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 601 (1982). Federal regulatory action that preempts state law creates a sufficient injury-in-fact to satisfy this prong. See Alaska v. U.S. Dep't of Transp., 868 F.2d 441, 443 (D.C.

Cir. 1989); Ohio ex rel. Celebrezze v. U.S. Dep't of Transp., 766 F.2d 228, 232-33 (6th Cir. 1985). Accordingly, we conclude that Wyoming has sufficiently alleged an injury-in-fact because the ATF's interpretation of § 7-13-1501 interferes with Wyoming's ability to enforce its legal code.

Moreover, there is little doubt that Wyoming's alleged injury satisfies the traceability and redressability requirements of standing. Article III requires "'proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact.'" Habecker v. Town of Estes Park, 518 F.3d 1217, 1225 (10th Cir. 2008) (quoting Nova Health Sys. v. Gandy, 416 F.3d 1149, 1156 (10th Cir. 2005)). Article III also requires "'that it is likely that a favorable court decision will redress the injury to the plaintiff.'" Summum v. Duchesne City, 482 F.3d 1263, 1268 (10th Cir. 2007) (quoting Utah Animal Rights Coal. v. Salt Lake City Corp., 371 F.3d 1248, 1255 (10th Cir. 2004)). Wyoming's alleged injury fulfills both requirements because the ATF's interpretation of § 7-13-1501 directly caused the injury and the requested injunctive and declaratory relief would bar the effect of that interpretation. Wyoming, therefore, has satisfied Article III's standard requirements, and we thus turn to consider whether Wyoming has similarly satisfied the prudential standing requirements.

**B.**

Wyoming relies on § 704 of the Administrative Procedure Act ("APA") to challenge the defendants' interpretation and application of sections 921 and 922 of the Gun Control Act.[6] Therefore, "[i]n addition to Article III standing requirements, [Wyoming] . . . must (i) identify some final agency action and (ii) demonstrate that its claims fall within the zone of interests protected by the statute forming the basis of its claims." Catron County Bd. of Comm'rs v. U.S. Fish & Wildlife Serv., 75 F.3d 1429, 1434 (10th Cir. 1996). We consider each of these requirements in turn.

The APA defines agency action, see 5 U.S.C. § 551(13),[7] but it does not define "final." Therefore, we evaluate whether an agency action is final based on two conditions. The agency action must "'mark the consummation of the agency's decisionmaking process.'" HRI, Inc. v. EPA, 198 F.3d 1224, 1236 (10th Cir. 2000) (quoting Bennett v. Spears, 520 U.S. 154, 177-78 (1997) (further quotation omitted)). In addition, "'the action must be one by which rights or obligations have been determined or from which legal consequences will flow.'" Id. (quoting Bennett, 520 U.S. at 178 (further quotation omitted)).

---

[6] Section 704 states, in pertinent part: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

[7] Section 551(13) defines agency action as: "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

An agency action is not consummate if it is "tentative [or] interlocutory [in] nature." Pennaco Energy, Inc. v. U.S. Dep't of Interior, 377 F.3d 1147, 1155 (10th Cir. 2004). Here, there is no reason to believe that the ATF's interpretation is either tentative or interlocutory. The ATF sent the Wyoming Attorney General five separate letters communicating that: (i) the ATF analyzed § 7-13-1501 and determined that "it will [not] have any effect whatsoever" on § 922(g)(9)'s proscription of firearm possession; (ii) the ATF determined that the Wyoming concealed-carry-permit program no longer qualified as an alternative to the NCIS background check system; and (iii) the ATF imposed a final deadline for action by the state of Wyoming to remedy the shortcomings of the concealed-carry-permit program. The cumulative effect of these letters demonstrates that the ATF's interpretation of § 7-13-1501 has been definite and unqualified since its initial letter in 2004. The fact that each letter is signed by either the Chief or Deputy Chief of the ATF Firearms Division bolsters the finality of the interpretation.

It is also clear that definite legal consequences flow from the ATF's interpretation. As the ATF letters state, the interpretation's results are two-fold. First, individuals with misdemeanor domestic violence convictions expunged pursuant to § 7-13-1501 cannot own or possess a gun pursuant to 18 U.S.C. § 922(g)(9), notwithstanding Wyoming's efforts to the contrary in § 7-13-1501. Second, because § 7-13-1501 would permit individuals with misdemeanor

domestic violence convictions to obtain a Wyoming concealed-carry permit, that permit program no longer qualifies as a NCIS background check alternative. Due to these two legal consequences, as well as the definite nature of the ATF's statements regarding § 7-13-1501, we conclude that those statements constitute final agency action.

Turning to the zone of interests test, the Supreme Court has explained that "[t]he proper inquiry is simply 'whether the interest sought to be protected by the complainant is <u>arguably</u> within the zone of interests to be protected . . . by the statute.'" <u>Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.</u>, 522 U.S. 479, 492 (1998) (quoting <u>Ass'n of Data Processing Serv. Orgs., Inc. v. Camp</u>, 397 U.S. 150, 153 (1970)). In other words, the statute in question need not indicate that Congress intended to benefit the plaintiff's interests. <u>Id.</u> We therefore analyze whether a plaintiff satisfies the zone of interests test by "discern[ing] the interests 'arguably . . . to be protected' by the statutory provision at issue," and then by "inquir[ing] whether the plaintiff's interests affected by the agency action in question are among them." <u>Id.</u>

The Gun Control Act (the "Act") primarily focuses on regulating the possession and transportation of firearms. The Act, however, also grants states significant latitude to determine the applicability of the Act by relying on state law, in part, to determine the classes of individuals that may not possess a firearm. <u>See</u> 18 U.S.C. § 922(g)(1) (prohibiting individuals "convicted in <u>any</u>

- 13 -

<u>court</u> of, a crime punishable by imprisonment for a term exceeding one year"

from possessing firearms (emphasis added)); <u>id.</u> § 922(g)(9) (prohibiting

individuals "convicted in <u>any court</u> of a misdemeanor crime of domestic violence"

from possessing a firearm (emphasis added)); <u>see also</u> <u>id.</u> § 921(a)(33)(B)(ii)

(dictating that a prior conviction no longer has force or effect for the purposes of

the Act if it has been expunged or set aside pursuant to state law).  Therefore, in

light of the states' interest in influencing the applicability of the Act, we conclude

that Wyoming's alleged injury falls within the zone of interests of the Act.

Accordingly, Wyoming has satisfied both prongs of our prudential standing

analysis, and we turn to the merits of the instant appeal.

### III.

### A.

We review <u>de novo</u> the district court's decision in a case brought pursuant

to the APA.  <u>N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.</u>, 248 F.3d

1277, 1281 (10th Cir. 2001).  The APA provides the standard by which we must

review the ATF's interpretation.  Section 706 states, in relevant part:

> the reviewing court shall decide all relevant questions of law,
> interpret constitutional and statutory provisions, and determine the
> meaning or applicability of the terms of an agency action.  The
> reviewing court shall . . . hold unlawful and set aside agency action,
> findings, and conclusions found to be . . . arbitrary, capricious, an
> abuse of discretion, or otherwise not in accordance with law.

5 U.S.C. § 706.  An agency's decision is arbitrary and capricious if the agency:

'relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'

Lamb v. Thompson, 265 F.3d 1038, 1046 (10th Cir. 2001) (quoting Friends of the Bow v. Thompson, 124 F.3d 1210, 1215 (10th Cir. 1997)).  With this standard in mind, we consider the ATF's interpretation.

**B.**

Wyoming contends that because § 7-13-1501 constitutes an "expungement" or "set aside" for the purposes of 18 U.S.C. § 921(a)(33), the ATF's interpretation of § 921(a)(33) and § 7-13-1501 is arbitrary and capricious.  In response, the ATF asserts that its interpretation is neither arbitrary nor capricious because the partial effect of § 7-13-1501 does not constitute an expungement or set aside as used in § 921(a)(33).  Unfortunately, the Act does not define expunge or set aside, and therefore we must undertake a careful analysis of the statute to determine Congress's intent.[8]  See N.M. Cattle Growers, 248 F.3d at 1281.

Section 921(a)(33)(B)(ii) states:

A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or

[8] Amici Gun Owners Foundation contends that we should consider whether § 7-13-1501 constitutes an expungement or a set aside by referencing a state law standard.  Wyoming, however, did not raise this argument in its brief.  We therefore decline to address this argument.  See Tyler v. City of Manhattan, 118 F.3d 1400, 1404 (10th Cir. 1997).

- 15 -

has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(33)(B)(ii) (emphasis added). There are two possible interpretations for the phrase "expunged or set aside." First, the use of the disjunctive "or" could indicate that Congress intended the two terms to have separate meanings. Second, Congress may have intended the two terms to have the same meaning and used separate terms merely to avoid potential issues of terminology created by the varying language used in the different laws of the States. As discussed in greater detail below, we conclude that Congress intended both terms equivalently to require that a state procedure completely remove the effects of the conviction in question. The ATF's interpretation is consistent with this construction of the statute, and accordingly, we hold that the ATF's interpretation is neither arbitrary nor capricious.

### i. Plain language of the statute

"'As in all cases requiring statutory construction, we begin with the plain language of the law.'" N.M. Cattle Growers, 248 F.3d at 1281 (quoting St. Charles Inv. Co. v. CIR, 232 F.3d 773, 776 (10th Cir. 2000)). "In so doing, we will assume that Congress's intent is expressed correctly in the ordinary meaning of the words it employs . . . ." Id. at 1281-82 (quotation omitted). In the case at bar, two aspects of the statute suggest that Congress intended both "expunged"

- 16 -

and "set aside" to require that the state procedure completely remove all effects of the conviction at issue.

First, the plain meaning of "expunge" and "set aside" are nearly equivalent. Black's law dictionary defines "expunge" as "[t]o erase or destroy." Black's Law Dictionary (4th ed. 2004).[9] Similarly, Black's defines "set aside" as "to annul or vacate." Id. Importantly for the context of § 921(a)(33), both definitions require a complete removal of the effects of a conviction.

Second, the structure of § 921(a)(33)(B)(ii) suggests that Congress intended the terms to be interpreted equivalently. The first portion of the subsection lists four state actions that would remove firearm disability: expunging, setting aside, pardoning, or restoring civil rights. See id. The second portion of the subsection—which we label the "unless" clause—is apparently intended to parallel and to be coextensive with the first portion of that subsection, yet it addresses only three state actions: pardoning, expunging, or restoring civil rights. Id. The absence of the term "set aside" suggests that Congress felt that "expungement" in the "unless" clause covered both "set asides" and "expungements."

### ii.    Deference to the ATF's interpretation

---

[9] We regularly rely on Black's Law Dictionary to determine the plain meaning of statutory terms. See, e.g., United States v. Pentrack, 428 F.3d 986, 989 (10th Cir. 2005).

The ATF's interpretation of 18 U.S.C. § 921(a)(33) and § 7-13-1501 also provides some support for our conclusion that the terms expunge and set aside both require the state procedure to remove completely the effects of a misdemeanor domestic violence conviction.  The ATF's interpretation is not entitled to <u>Chevron</u>[10] deference because the ATF did not interpret the statutes pursuant to an adjudication or a formal rulemaking process.  <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d 1217, 1226 (10th Cir. 2007).  Instead, we afford the interpretation deference only to the extent "the agency's interpretation is 'well reasoned' and has the 'power to persuade.'" <u>N.M. Cattle Growers</u>, 248 F.3d at 1281 (quoting <u>Fristoe v. Thompson</u>, 144 F.3d 627, 631 (10th Cir. 1998)).

In its several letters to the state of Wyoming, the ATF stated that § 7-13-1501 did not result in "expungement" for the purposes of § 921(a)(33)(B)(ii).  The ATF concluded that because "the conviction records are not destroyed and remain available to law enforcement agencies for criminal enforcement purposes, Wyoming Statute 7-13-1501 does not result in 'expungement' that removes the fact of conviction for criminal justice purposes."  While this interpretation only addresses the term "expunge," given our determination that Congress intended the two terms to have equivalent meanings, we find that this interpretation offers persuasive support in favor of our conclusion that § 921(a)(33)(B)(ii) requires the

---

[10]<u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984).

complete removal of all effects of a prior conviction to constitute either an expungement or a set aside.

### iii.    Persuasive authority

A recent decision from the Ninth Circuit also supports our conclusion. See Jennings v. Mukasey, 511 F.3d 894 (9th Cir. 2007). In Jennings, the petitioner had previously pleaded nolo contendere to misdemeanor domestic assault in violation of California law. Id. at 896. The petitioner, however, pursuant to California Penal Code § 1203.4, had also sought and received a California court order "Expunging Conviction Nunc Pro Tunc." Id. at 897. In spite of this court order, the ATF denied the petitioner's application to renew his firearm dealer license renewal application because it concluded that the court order did not remove the petitioner's firearms disability. Id.

On review, the Ninth Circuit affirmed this decision. Id. at 899. The court carefully reviewed § 1203.4 and concluded that the statute contained an important limitation on its "expungement" relief: the statute permitted "expunged" convictions to be taken into account in any subsequent prosecution. Id. at 899. In light of this limitation, the court concluded that § 1203.4 did not "expunge" the petitioner's conviction for purposes of § 921(a)(33). Id.

The facts in the case at bar are similar to Jennings. Both statutes limit the relief they afford to allow the state to take into account prior convictions. We find the Ninth Circuit's analysis in Jennings persuasive.

Wyoming asserts that reliance on Jennings is misplaced and contends that another Ninth Circuit case, United States v. Laskie, 258 F.3d 1047 (9th Cir. 2001), supports its position. We disagree and do not find Laskie persuasive because it is distinguishable from the case at bar. The Laskie court addressed whether a certificate granted pursuant to Nevada Revised Statute § 176.225 constituted a set aside for purposes of 18 U.S.C. § 921(a)(20).[11] Id. at 1050–52. The certificate the defendant received stated, in pertinent part: "the previous finding of Guilty be changed to that of Not Guilty, and the Information herein dismissed. . . . Defendant . . . is hereby discharged from supervision and released from all penalties and disabilities resulting from the crime of which he has been convicted." Id. at 1050. Section 176.225.3 also provided, however, that the dismissed conviction still counted as a conviction for Nevada's felon-in-possession statute. Id. at 1051.

The Laskie court concluded that the effect of § 176.225.3 was not dispositive in that case because of the "anti-mousetrapping rule." Id. at 1049–50. That rule dictates that "'[i]f the state sends the felon a piece of paper implying

_____

[11] 18 U.S.C. § 921(a)(20) defines the term "crime punishable by imprisonment exceeding one year," and substantially mirrors the language in § 921(a)(33) except as noted in footnote 9, which discusses the placement of a comma between "expunged" and "or set aside." See 18 U.S.C. § 921(a)(20) ("Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.").

that he is no longer 'convicted' and that <u>all</u> civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution.'" <u>Jennings</u>, 511 F.3d at 900–01 (quoting <u>Laskie</u>, 258 F.3d at 1049-50 ).  As a result of this rule, the court concluded that the defendant's conviction had been set aside because the "[d]efendant . . . reasonably can complain that he was 'mousetrapped'—that is, led to believe by the state that he was 'released from all penalties and disabilities resulting from the crime of which he has been convicted,' when, in fact, he was not entitled to possess firearms." <u>Laskie</u>, 258 F.3d at 1052.

Unlike <u>Laskie</u>, but similar to <u>Jennings</u>, the Wyoming statute does not provide certificates which wrongly represent that a defendant is "released from all penalties and disabilities resulting" from the conviction at issue.  Instead, § 7-13-1501 specifically provides that "expungement granted pursuant to this section <u>shall only be used for the purposes of restoring firearm rights</u> that have been lost to persons convicted of misdemeanors.  Nothing in this section shall be construed to affect the enhancement of penalties for second or subsequent convictions of misdemeanors under the laws of this state." Wyo. Stat. Ann. § 7-13-1501 (emphasis added).  In light of this explicit language and the lack of any suggestion by Wyoming that the § 7-13-1501 procedure would be similarly misleading, we conclude that the "anti-mousetrapping" rule from <u>Laskie</u> does not apply to the instant case.

- 21 -

### iv. Wyoming's remaining arguments

Wyoming contends that interpreting expunge and set aside to have equivalent meanings would wrongly render the phrase "or set aside" as mere surplusage. The law of this circuit dictates that "we cannot 'construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous,'" United States v. Power Eng'g Co., 303 F.3d 1232, 1238 (10th Cir. 2002) (quoting United States v. Power Eng'g Co., 125 F. Supp. 2d 1050, 1059 (D. Colo. 2000)); however, in the instant case, our interpretation achieves no such result.

A brief survey of the laws of the various States reveals countless statutes that use the phrase "set aside" rather than "expungement." For example, Michigan statute § 780.621 dictates that "a person who is convicted of not more than 1 offense may file an application with the convicting court for the entry of an order setting aside the conviction." Mich. Comp. Laws § 780.621 (emphasis added). Similarly, Arizona statute § 13-907 provides that "every person convicted of a criminal offense, on fulfillment of the conditions of probation or sentence and discharge by the court, may apply . . . to have the judgment of guilt set aside." Ariz. Rev. Stat. § 13-907 (emphasis added); see also Alaska Stat. § 12-55-085(e); Idaho Code § 19-2604(1); N.Y. Exec. Law § 19; Okla. Stat. tit. 10, § 7306-2.12; Or. Rev. Stat. § 137.225(1)(a). This use of terminology demonstrates that our interpretation of § 921(a)(33)(B)(ii) does not render the phrase "or set aside" mere surplusage because that phrase takes into account the

variety of state laws that use the term "set aside," rather than "expunge," to accomplish the same result.

Wyoming also contends that the United States Sentencing Guidelines' use of the terms expunge and set aside demonstrate that they do not have equivalent meanings. We disagree. The language of the Act and the Guidelines demonstrates that the Guidelines offer little persuasive value in the context of the case at bar because the respective uses of the term set aside are inconsistent.

Comment 10 to § 4A1.2 of the Sentencing Guidelines provides the basis for Wyoming's argument. That comment states in full:

> A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted [for purposes of calculating a defendant's criminal history category]. However, expunged convictions are not counted.

U.S.S.G. § 4A1.2, cmt.10. Comment 6, which is also relevant to our analysis, states:

> Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted [for purposes of calculating a defendant's criminal history category].

Id. cmt. 6. Our precedent dictates we must look to the basis of the expungement or set aside to determine whether such an action constitutes an expungement for the purposes of the Sentencing Guidelines. United States v. Hines, 133 F.3d

1360, 1363 (10th Cir. 1998). Thus, echoing the language of comments 6 and 10, we declared:

> Convictions reversed or vacated for reasons related to constitutional invalidity, innocence, or errors of law are <u>expunged for purposes of the Guidelines</u> and therefore cannot be included in criminal history calculations. . . . When convictions are set aside for reasons other than innocence or errors of law, <u>such as to restore civil rights</u> or remove the stigma of a criminal conviction, those convictions are counted for criminal history purposes.

<u>Id.</u> (second emphasis added) (quoting <u>United States v. Cox</u>, 83 F.3d 336, 339–40 (10th Cir. 1996)).

Wyoming correctly highlights the distinction between expunge and set aside in the context of the Sentencing Guidelines. However, we do not find Wyoming's argument persuasive given Congress's explicit language in § 921(a)(33)(B)(ii). As noted above, the Sentencing Guidelines explicitly distinguish between expungement and set aside on the basis of the state action. If the state sought to reverse a conviction due to constitutional error or innocence, the Guidelines construe that action as an expungement. <u>See</u> <u>Hines</u>, 133 F.3d at 1363. On the other hand, if the state reversed the conviction merely to <u>restore civil rights</u> or remove the stigma of a criminal conviction, the Guidelines construe that action as a set aside. <u>Id.</u> This dichotomy is plainly at odds with Congress's language in § 921(a)(33)(B)(ii), which states: "[a] person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person

- 24 -

has been pardoned or <u>has had civil rights restored</u>." 18 U.S.C. § 921(a)(33)(B)(ii) (emphasis added). Congress explicitly included the restoration of civil rights in § 921(a)(33), demonstrating that Congress did not intend to apply the same dichotomy to the context of the Act. Therefore, we do not find the Guidelines' use of the terms expunge and set aside persuasive for our analysis in the instant case.

**IV.**

For the reasons stated above, we conclude that Congress intended the terms "expunge" and "set aside," as used in § 921(a)(33)(B)(ii), to require that a state procedure completely remove the effects of a prior misdemeanor conviction. Section 7-13-1501 undoubtedly fails to meet that standard, and accordingly, the district court correctly dismissed Wyoming's suit. We therefore AFFIRM the decision of the district court.