# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pennsylvania State Police, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 235 C.D. 2022 |
| | : | |
| Michael Drake, | : | |
| Respondent | : | Submitted: September 13, 2023 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge

OPINION
BY JUDGE CEISLER                            FILED:  October 30, 2023

Petitioner Pennsylvania State Police (PSP) appeals from the Office of the Attorney General's (OAG) February 17, 2022 order, through which an OAG administrative law judge (ALJ) reversed the PSP's denial of Respondent Michael Drake's (Drake) application for a license to carry a concealed firearm. After thorough review, we reverse in part, vacate in part, and remand this matter to the OAG for proceedings consistent with this opinion.

## I. Background

On May 30, 2015, Drake was arrested in Folsom, California, and was charged with multiple crimes relating to violent acts he had perpetrated against the mother of his young son. Reproduced Record (R.R.) at 91a-92a, 96a-101a. Drake subsequently pled *nolo contendere* in the Superior Court of California, County of Sacramento

(California Superior Court), to 1 misdemeanor count each of false imprisonment[1] and unlawfully carrying a concealed firearm,[2] and was sentenced on October 9, 2015, to 45 days in county jail, along with 258 hours of community service. *Id*. at 84a, 90a.

At some point thereafter, Drake moved to Pennsylvania. He then sought post-conviction relief by filing a petition for dismissal with the California Superior Court, which was granted on April 4, 2019, pursuant to California Penal Code Section 1203.4.[3] *Id.* at 104a-05a. In doing so, the California Superior Court set aside Drake's

---

[1] Cal. Penal Code § 236.

[2] Cal. Penal Code § 25400(a)(1).

[3] At that point in time, this provision stated, in relevant part:

> In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if they are not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw their plea of guilty or plea of *nolo contendere* and enter a plea of not guilty; or, if they have been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, the defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which they have been convicted, except as provided in Section 13555 of the [California] Vehicle Code. The probationer shall be informed, in their probation papers, of this right and privilege and the right, if any, to petition for a certificate of rehabilitation and pardon. The probationer may make the application and change of plea in person or by attorney, or by the probation officer authorized in writing. However, in any

**(Footnote continued on next page…)**

*nolo contendere* plea, entered a not guilty plea on his behalf, and dismissed the criminal complaint that had been filed against him in 2015. R.R. at 104a. Additionally, the California Superior Court stated in its order memorializing this dismissal that:

> [Drake] is released from all penalties and disabilities resulting from the offense except as provided in [California] Penal Code sections 29800 and 29900 . . . and [California] Vehicle Code section 13555. In any subsequent prosecution of [Drake] for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or [criminal] information dismissed. The dismissal does not permit a person to own, possess, or have in his . . . control a firearm if prevented by [California] Penal Code sections 29800 or 29900[.]

*Id.* at 105a.

On May 6, 2019, Drake applied for a license to carry a concealed firearm at the York County Sheriff's Office, which was denied when the Pennsylvania Instant

---

subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed. The order shall state, and the probationer shall be informed, that the order does not relieve them of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery Commission.

(2) Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have custody or control of any firearm or to prevent conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6 [of the California Penal Code].

Former Cal. Penal Code § 1203.4(a)-(b) (2019).

3

Check System (PICS)[4] indicated that Drake was legally prohibited from obtaining such a license. *Id.* at 2a, 70a. Drake then filed a PICS challenge with the PSP on May 14, 2019, which the PSP denied on June 26, 2019. *Id.* at 70a-77a. In doing so, the PSP explained that Drake's application had been denied because of his aforementioned false imprisonment conviction. *Id.* at 74a, 77a.

Shortly thereafter, Drake appealed the PSP's denial to the OAG, whereupon an OAG ALJ held an evidentiary hearing on July 12, 2021. The ALJ then took the matter under advisement and, on February 17, 2022, issued an order granting Drake's appeal. *Id.* at 1a. In the written adjudication that accompanied this order, the ALJ explained that he had made this ruling for two reasons. First, the California Superior Court's April 4, 2019 order, which set aside Drake's 2015 *nolo contendere* plea, meant that his false imprisonment conviction could not be considered a "conviction" for purposes of federal or Pennsylvania gun control law and, thus, could not impede Drake's ability to secure a license to carry a concealed firearm. *Id.* at 15a-18a. Second, the PSP had not established that Drake's situation involved a firearm that had moved in or affected interstate commerce, as the ALJ believed the PSP was required to do under both federal and state law. *Id.* at 18a. Accordingly, the ALJ concluded that the PSP lacked a legally valid basis for denying Drake's application. *Id.* at 18a-19a. In response, the PSP appealed the OAG's order to our Court on March 17, 2022.

---

[4] "The General Assembly created [PICS], the state's digitized background check database, to afford the PSP instantaneous access to an applicant's criminal and mental health records at the local, state, and federal level." *Pa. State Police v. Madden*, 284 A.3d 272, 275 n.3 (Pa. Cmwlth. 2022).

## II. Discussion

The PSP offers three arguments for our consideration, which we summarize as follows.[5] First, the California Superior Court's set aside order did not expunge Drake's false imprisonment conviction. Therefore, despite being "set aside," the existence of that conviction still necessitated the denial of Drake's application for a license to carry a concealed firearm. PSP's Br. at 9-13. Second, Drake failed to make any interstate commerce-related arguments during the course of his administrative appeal to the OAG. Consequently, the ALJ erred by *sua sponte* raising and ruling upon such an argument, *i.e.*, whether the PSP had shown that the matter involved a firearm that had moved in or affected interstate commerce. *Id.* at 15-16. Finally, even if Drake had properly preserved that claim, the ALJ's ruling regarding this issue was wrong on the merits, as it disregarded unambiguous statutory language, was absurd and unreasonable, and wrongly relied upon an interstate commerce-related requirement that was present in federal law, but not in state law. *Id.* at 16-18.[6]

The PSP's first argument hinges upon the interplay between California law, federal law, and Pennsylvania law. Per Section 6109(e) of the Uniform Firearms Act of 1995 (UFA), "[a]n individual who is . . . prohibited from possessing, using, manufacturing, controlling, purchasing, selling or transferring a firearm as provided

---

[5] We review an administrative adjudication of this nature for abuses of discretion, errors of law, and violations of constitutional rights. *Pa. State Police v. Viall*, 774 A.2d 1288, 1290 (Pa. Cmwlth. 2001) (citing 2 Pa. C.S. § 704). "An abuse of discretion will be found only if [administrative] findings [of fact] are not supported by substantial evidence, that is, such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Zoning Hearing Bd. of Sadsbury Twp. v. Bd. of Sup'rs of Sadsbury Twp.*, 804 A.2d 1274, 1278 (Pa. Cmwlth. 2002).

[6] Drake neglected to file a brief in this matter, in contravention of the briefing schedule, as well as of this Court's November 2, 2022 order that directed him to correct this oversight no later than November 16, 2022. As a consequence, we precluded him from filing a brief on December 5, 2022.

5

by [S]ection 6105 [of the UFA,]" or "who is prohibited from possessing or acquiring a firearm under the statutes of the United States[,]" is barred from obtaining a license to carry a firearm in Pennsylvania. 18 Pa. C.S. § 6109(e)(1)(xiii)-(xiv). Pursuant to Section 6105 of the UFA, "[a] person who is prohibited from possessing or acquiring a firearm under [Section 922(g)(9) of the Federal Gun Control Act (FGCA),] 18 U.S.C. § 922(g)(9)[,]" is also prohibited from securing such a license in this Commonwealth. *Id.* § 6105(a)(1), (c)(9), (h). In turn, Section 922(g) of the FGCA provides, in relevant part:

> It shall be unlawful for any person--
>
> . . . .
>
>> (9) who has been convicted in any court of a misdemeanor crime of domestic violence,
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g). Generally speaking, Section 922(g)

> makes possession of a firearm unlawful when the following elements are satisfied: (1) a status element (here "[convicted in any court of a misdemeanor crime of domestic violence]"); (2) a possession element (to "possess"); (3) a jurisdictional element ("in or affecting commerce"); and (4) a firearm element (a "firearm or ammunition").

*Rehaif v. United States*, 139 S. Ct. 2191, 2195-96 (2019). The FGCA also includes an exception to this rule, however, in that

> [a] person shall not be considered to have been convicted of [a misdemeanor crime of domestic violence] for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of

6

civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(33)(B)(ii).

Upon reviewing this statutory language, as well as the factual record, the ALJ determined that Drake's false imprisonment conviction constituted a misdemeanor crime of domestic violence, but reasoned that the California Superior Court's set aside order had rendered that conviction a nullity. *See* R.R. at 16a-17a. Because of this, as well as the absence in the set aside order of any language that imposed firearms-related restrictions upon Drake, the ALJ concluded that Section 922(g)(9) of the FGCA did not bar Drake from possessing or acquiring a firearm and, consequently, that Drake was not prohibited by either Section 6105 or 6109 of the UFA from obtaining a permit to carry a concealed firearm. *See id.* at 14a-17a.

This conclusion is deeply flawed and rests upon the ALJ's misunderstanding of the aforementioned state and federal laws, as well as his disregard for how the meaning of "set aside" differs in each context. As just discussed, an individual's conviction for a misdemeanor crime of domestic violence does not qualify as a "conviction" for purposes of Section 921(a)(33)(B)(ii) of the FGCA "if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored[.]" 18 U.S.C. § 921(a)(33)(B)(ii). This presents a question of statutory interpretation regarding the contextual meaning of "set aside."

7

Helpfully, the United States Circuit Court for the Tenth Circuit already answered this very question in *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236 (10th Cir. 2008).[7] As the *Crank* Court explained,

> [t]here are two possible interpretations for the phrase "expunged or set aside." First, the use of the disjunctive "or" could indicate that Congress intended the two terms to have separate meanings. Second, Congress may have intended the two terms to have the same meaning and used separate terms merely to avoid potential issues of terminology created by the varying language used in the different laws of the States.

*Crank*, 539 F.3d at 1244-45. The Tenth Circuit ruled that the second interpretation was the more reasonable one, concluding that

> two aspects of the statute suggest that Congress intended both "expunged" and "set aside" to require that the state procedure completely remove all effects of the conviction at issue.
>
> First, the plain meaning of "expunge" and "set aside" are nearly equivalent. Black's [L]aw [D]ictionary defines "expunge" as "[t]o erase or destroy." Black's Law Dictionary (4th ed. 2004).[] Similarly, Black's defines "set aside" as "to annul or vacate." *Id.* Importantly for the context of [Section] 921(a)(33), both definitions require a complete removal of the effects of a conviction.
>
> Second, the structure of [Section] 921(a)(33)(B)(ii) suggests that Congress intended the terms to be interpreted equivalently. The first portion of the subsection lists four state actions that would remove firearm disability: expunging, setting aside, pardoning, or restoring civil rights. *See id.* The second portion of the subsection— which we label the "unless" clause—is apparently intended to parallel and to be coextensive with the first portion of that subsection, yet it addresses only three state actions: pardoning, expunging, or restoring civil rights. *Id.*

---

[7] Though inferior federal courts' interpretations of federal law are not binding upon this Court, they nevertheless may constitute persuasive authority that we may follow at our discretion. *Cole v. Pa. Dep't of Env't Prot.*, 257 A.3d 805, 813 (Pa. Cmwlth. 2021).

8

> The absence of the term "set aside" suggests that Congress felt that "expungement" in the "unless" clause covered both "set asides" and "expungements."

*Id.* at 1245 (footnote omitted). We agree with the *Crank* Court's reasoning and hold that, under Section 921(a)(33)(B)(ii) of the FGCA, the terms "expunged" and "set aside" are synonymous. Furthermore, like the Tenth Circuit, we conclude that, for purposes of this federal statute, a conviction for a misdemeanor crime of domestic violence is expunged or set aside only when the limitations that were imposed upon the guilty individual as a result of that conviction are completely eliminated.

It follows from this, then, that unless a set aside order issued pursuant to California Penal Code Section 1203.4 effectively wipes the slate clean, the underlying domestic violence conviction remains as a bar under federal law to the convicted individual's ability to acquire or possess a firearm, and prevents acquisition, licensure, or possession under Pennsylvania law. Given that it is well settled under California law that such orders do not expunge convictions and, instead, leave a multitude of limitations in place, the California Superior Court's April 4, 2019 order did not expunge Drake's conviction for purposes of Section 921(a)(33)(B)(ii) of the FGCA. *See Bacon v. Pa. State Police*, 164 A.3d 563, 567-70 (Pa. Cmwlth. 2017); *People v. Gross*, 190 Cal. Rptr. 3d 472, 477 (Cal. App. 4th 2015); *Jennings v. Mukasey*, 511 F.3d 894, 898-99 (9th Cir. 2007); *People v. Frawley*, 98 Cal. Rptr. 2d 555, 559-60 (Cal. App. 4th 2000). In other words, the ALJ improperly concluded that this "set aside" under California law also qualified as a "set aside" under federal law, and consequently erred when he ruled that Drake's false imprisonment conviction could not prevent Drake from obtaining a license to carry a concealed firearm.

The PSP's next argument, that Drake waived the issue of whether the PSP had shown that the matter involved a firearm that had moved in or affected interstate

commerce, is incorrect. Per Section 6111.1(e)(3) of the UFA, in instances where the PSP affirms the denial of a firearms license, the affected individual may appeal the PSP's determination to the OAG. 18 Pa. C.S. § 6111.1(e)(3). This statute mandates that, in such a scenario, "[t]he [OAG] shall conduct a hearing *de novo* in accordance with the Administrative Agency Law[, 2 Pa. C.S. §§ 501-508, 701-704]. The burden of proof shall be upon the Commonwealth." *Id.* In other words, the OAG ALJ does not need to give the underlying license denial decision any deference, while the PSP must prove that the denial was legally and factually proper. *Id.* It was therefore the PSP's burden to prove to the ALJ that this matter involved a firearm that had moved in or affected interstate commerce, rather than Drake's responsibility to raise the interstate commerce issue himself. *See Pa. State Police v. Madden*, 284 A.3d 272, 277 (Pa. Cmwlth. 2022); *Navarro v. Pa. State Police*, 212 A.3d 26, 51-55 (Pa. 2019). The PSP's waiver argument is therefore without merit.

The PSP's final argument, that proof of a firearm's movement in or effect upon interstate commerce is not required to sustain a license denial under Pennsylvania law, is predicated upon a reading of the UFA that this Court has recently rejected. The PSP's assertion on this point relies upon its reading of Section 6105(c)(9) of the UFA. This statute provides:

> (c) Other persons.--In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):
>
> . . . .
>
> (9) A person who is prohibited from possessing or acquiring a firearm under 18 U.S.C. § 922(g)(9). If the offense which resulted in the prohibition under 18 U.S.C. § 922(g)(9) was committed, as provided in 18 U.S.C. § 921(a)(33)(A)(ii) (relating to definitions), by a person in any of the following relationships:

10

> (i) the current or former spouse, parent or guardian of the victim;
>
> (ii) a person with whom the victim shares a child in common;
>
> (iii) a person who cohabits with or has cohabited with the victim as a spouse, parent or guardian; or
>
> (iv) a person similarly situated to a spouse, parent or guardian of the victim;
>
> then the relationship need not be an element of the offense to meet the requirements of this paragraph.

18 Pa. C.S. § 6105(c)(9). The PSP argues that, as Section 6105(c)(9) does not mention "firearm" or "interstate commerce," this statute's prohibitory language applies directly to the person who seeks licensure, without concern for whether the weapon to which the license would apply travelled in interstate commerce. PSP's Br. at 16-18. Accordingly, the PSP asserts the OAG ALJ improperly read into this statutory language a requirement that the PSP establish a nexus between the weapon and interstate commerce in order to justify the denial of an application for a license to carry a concealed firearm under Pennsylvania law. *Id.*

The PSP's preferred reading of Section 6105(c)(9) cannot carry the day, however, as this Court already rejected it in *Madden*. In that case, Madden applied to have the PSP return his firearm after he was convicted of disorderly conduct and had completed his sentence. *Madden*, 284 A.3d at 274-75. The PSP subsequently denied this application on the basis that Madden's conviction was for a misdemeanor crime of domestic violence, which triggered prohibitions against possession and ownership of a firearm under Section 922(g)(9) of the FGCA and Section 6105(c)(9) of the UFA. *Id.* at 275. Madden challenged the PSP's denial of his application to return his firearm, whereupon an OAG ALJ reversed the PSP's denial, on the basis that the PSP had failed to meet its burden under both of those statutes to prove that

11

the at-issue firearm had moved in interstate commerce. *Id.* at 275. The PSP then appealed the ALJ's decision to this Court and, of relevance to this matter, argued that the plain language of Section 6105(c)(9) did not require proof of a firearm's travel in interstate commerce in order to trigger that statute's prohibition against firearm ownership and possession. *Id.* at 277. We disagreed, explaining that

> [a]lthough we acknowledge the phrase "interstate commerce" is nowhere to be found within Section 6105 of the UFA, our plain language analysis does not end there. We cannot ignore that Section 6105(c)(9) expressly imports the requirements of Section 922(g)(9) of the FGCA. Thus, the interstate commerce element is automatically triggered by Section 6105(c)(9) of the UFA. In other words, an individual cannot violate Section 6105(c)(9) of the UFA without violating Section 922(g)(9) of the FGCA. Accordingly, bound by the plain language of the UFA and the FGCA, proof of the interstate commerce element is required to satisfy a firearm application denial under Section 6105(c)(9) of the UFA.

*Id.* at 278. While the genesis of this matter differs from *Madden*, in that this case involves a firearms license application, the relevant statutory language is identical. Accordingly, just as in *Madden*, we hold that it was the PSP's burden under Section 6105(c)(9) to show that Drake's firearm moved in or affected interstate commerce.

Given that *Madden* was published in October 2022, it post-dated the ALJ's reversal of the PSP's license denial in this matter, the PSP's subsequent appeal to this Court, and the PSP's appellate brief. Thus, this reading of Section 6105(c)(9) and the burdens it imposes upon the PSP regarding proof of a firearm's travel in interstate commerce was not known to the PSP at any of these junctures. We therefore consider it prudent to remand this matter in part to the OAG, with instructions that the ALJ hold an evidentiary hearing that is limited to this issue, with

12

the burden of proof placed upon the PSP,[8] and then make necessary factual findings and legal conclusions thereafter. *See Madden*, 284 A.3d at 278-79 (remanding matter to OAG due to effect of Pennsylvania Supreme Court decision that had been published while the PSP's appeal to Commonwealth Court was pending resolution).

### III. Conclusion

In light of the foregoing analysis, we reverse the OAG's February 17, 2022 order in part, vacate it in part, and remand this matter to the OAG for proceedings consistent with this opinion.

_____
ELLEN CEISLER, Judge

Judge McCullough dissents and wishes to be so noted.

---

[8] As the Supreme Court explained in *Navarro*, "the evidence relating to such commerce need not be extensive and may be satisfied by showing the gun was manufactured outside Pennsylvania (or that the gun otherwise crossed state lines)." 212 A.3d at 33.

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,       :
                    Petitioner   :
                                 :
        v.                       :       No. 235 C.D. 2022
                                 :
Michael Drake,                   :
                    Respondent   :


**O R D E R**

AND NOW, this 30th day of October, 2023, it is hereby ORDERED that the Office of the Attorney General's (OAG) February 17, 2022 order is REVERSED IN PART, regarding its determination that the "set aside" of Respondent Michael Drake's (Drake) conviction in California for false imprisonment expunged that conviction for purposes of Section 921(a)(33)(B)(ii) of the Federal Gun Control Act, 18 U.S.C. § 921(a)(33)(B)(ii). It is also ORDERED that the OAG's order is VACATED IN PART, regarding its determination that Respondent Pennsylvania State Police (PSP) failed to prove that this matter involves a firearm that had moved in or affected interstate commerce. Finally, it is ORDERED that this matter is REMANDED to the OAG, with instructions that it hold an evidentiary hearing limited to addressing this interstate commerce issue, with the burden of proof placed upon the PSP, and thereafter issue a new order that contains the necessary factual findings and legal conclusions.

Jurisdiction relinquished.


_____
ELLEN CEISLER, Judge